JAMES STEVEN SETZER *v.* STATE OF MARYLAND

[No. 287, September Term, 1975.]

*Decided December 4, 1975.*

The cause was argued before MOYLAN, GILBERT and MELVIN, JJ.

*Melvin J. Kodenski, Assigned Public Defender,* for appellant.

*John A. Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Stephen Sachs, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

In this appeal we are required to reverse the judgment of

the Criminal Court of Baltimore, entered upon a jury verdict finding the appellant, James Steven Setzer, guilty of the crime of rape. We take that action because the prosecution, over objection, was allowed to inject into the trial of appellant, in the guise of rebuttal testimony, the "bad man" theory that we strongly condemned in *Dobson v. State*, 24 Md. App. 644, 335 A. 2d 124 (1975), *cert. denied* 275 Md. 747 (June 2, 1975).

Although the appellant disputes what he perceives as two rulings relating to the intromitting of evidence, we view the two as being so intervolved that they are virtually inseparable.

The State in its case in chief against appellant showed that he had met the prosecutrix on the morning of March 11, 1974. They had known each other for approximately six years. The intensity of their acquaintanceship is a matter of dispute. The prosecutrix told the jury that appellant offered to take her to a shoe manufacturing company in order that she could seek employment there. En route the appellant stopped his vehicle in front of the building in which he resided in a basement apartment. He told the prosecutrix that he was expecting a telephone call from his cousin, but that he wanted to take a bath before going to work. The prosecutrix was asked to wait in appellant's apartment and to answer the telephone if it rang while the appellant was taking his bath. She agreed. The apartment consisted of a large, combination livingroom-bedroom, a kitchen and a bathroom. Instead of immediately proceeding to take his bath, appellant, according to the prosecutrix, took a "gun" from the wall, told her "this is a rip-off", and ordered her to disrobe. The young woman refused to obey and appellant produced a knife which he placed against her throat, and " . . . the blade just came right out of it [the knife]." He unbuttoned some of her clothing and she removed the rest. When she was nude, she was thrown on the bed and ravished. After completing the sexual attack, appellant began to cry, apologized for what he had done and requested that the prosecutrix not tell the police. Appellant filled the bathtub, hopped in and hopped out, all the time keeping the

prosecutrix with him in the bathroom. Appellant drove the prosecutrix to a place near her home, and she "ran" into the house crying. Later that day she telephoned her stepmother, told her what had occurred, and on the stepmother's advice, called the police. Appellant was apprehended and charged.

Appellant's version of the events differed sharply with those of the prosecutrix. He testified that the sexual relationship that took place between himself and the prosecutrix was consensual. In fact, he related a series of times that sexual intercourse had occurred between the two, and he supplied a witness. The witness told the jury that appellant and the prosecutrix had used the witness's apartment on a number of occasions for their sexual gratification.

During the course of his direct examination appellant was asked:

> "Did you at any time during the 11th day of March hold a knife up to her body, or threaten her with a knife of any kind?"

He responded:

> "No sir. There was never a knife."

The transcript of the cross-examination of the appellant's wife by the Assistant State's Attorney reveals:

> "Q Does your husband own a knife?
>
> A Not that I know of.
>
> Q Okay. Now, particularly attempting to describe a knife, that it's almost like a cutting box cutter kind of knife which sort of appears to be a switch-blade, where you would push something on the side and push out a blade, do you ever recall seeing any knife like that in your apartment?
>
> A No.
>
> Q Do you recall seeing your husband with possession of a knife like that in or outside of the apartment?

A No.

Q You never saw a knife like that in or outside of the apartment?

A No.

Q Ever seen a knife like that in the car?

A No.

Q To the best of your recollection, both today and that day, there was no knife as I described to you on your premises, or that you had ever seen your husband in possession of, that may have been on your premises, correct?

A Wait a minute. What was the question again?

Q I'll simplify it. What I'm saying is that you had no reason to believe that there was a knife that I have described to you either on your premises, from having personally seen it, or in your husband's possession at anytime? You had no reason to believe that the knife was in your premises?

A I never saw that kind of knife. My husband never had a knife like that that I know of.

Q The only kind of knife you had, would be the normal kitchen knives or utility things?

A Yes."

Over strenuous objection, the State, in rebuttal, produced another young woman who testified that she had known the appellant for about five years. Sometime during the early part of 1974 — she could not remember whether the event about which she testified took place before or after the date of the happenings in the instant case — she was picked up by the appellant and taken in his vehicle to an area in Baltimore County near Sparrows Point. There appellant produced a knife, a "box cutter", that he held to her throat, and he ordered her to undress. After a conversation in which she steadfastly refused to disrobe, he and she alit from the car. After some conversation between appellant and the

witness, she re-entered the vehicle, and he drove her to a bar in the Highlandtown area of Baltimore City.

It is, of course, the testimony of the rebuttal witness that the appellant strenuously assails in this Court. He argues that the obvious purpose of the State's using the rebuttal witness was to show that the appellant was a "bad man", likely to have committed the offense in the instant case because, according to the rebuttal witness, he had attempted to commit a similar offense in a time frame encompassing three months, and occurring during that time, either before or after the events of the case now before us. Patently, the witness was also used to underpin the prosecutrix's statement that the appellant had a knife where " . . . the blade just came right out of it," that he held to her throat. The evidence was further intended, we think, to demonstrate that appellant was in the habit of carrying, and threatening to use, a retractable blade knife.

The State, in response to the appellant's argument, seizes upon appellant's above quoted answer, "No sir. There was never a knife," as a blanket denial by appellant that he had ever owned a knife. Therefore, the State reasons, the testimony of the rebuttal witness was proper in that it indicated that appellant had, in fact, owned a knife similar to that described by the prosecutrix. We think the State reads the appellant's response completely out of context. We do not view it as a blanket denial of his ever having owned a knife, but rather as a specific answer to the question "Did you at any time during the 11th day of March hold a knife up to her [the prosecutrix's] body, or threaten her [the prosecutrix] with a knife of any kind?" The answer, as given by the appellant, "No sir. There was never a knife" means that the appellant did not hold a knife against the body of the prosecutrix nor did he threaten her with a knife because there was no knife. In sum, appellant was but denying explicitly that he used a knife on the appellant at the time, date, and place of the alleged rape.

Furthermore, the testimony of the rebuttal witness cannot be said to be a rebuttal of the evidence as given by the appellant's wife because what she said was that her " . . .

husband never had a knife like that that I know of." The rebuttal witness's evidence did not serve to rebut the wife's testimony inasmuch as there was no showing that the husband ever possessed such a knife, under circumstances where the wife knew, or should have known, of its existence. *See Dobson v. State*, 24 Md. App. at 659, 335 A. 2d at 133.

The State advances a further theory as to why the rebuttal testimony concerning an alleged prior attack upon the rebuttal witness was proper. The State says " . . . her testimony was clearly relevant, for it tended to establish the primary fact at issue in the case, whether or not the sexual relations with the victim were undertaken with her consent, in addition to its relevance for the purpose of impeaching the credibility of the Appellant." The State concludes that the rebuttal testimony " . . . was not offered to prove the Appellant's guilt by establishing a prior offense or . . . a lustful propensity, but rather was offered only to impeach his testimony as to consent and as to the use of the knife." Whatever the State's purpose in introducing the rebuttal testimony, it clearly tended to convey to the jury that the appellant had committed, or attempted to commit, a similar sexual assault upon another woman, and, *ergo*, he must be guilty of the assault upon the prosecutrix.

Our perusal of the trial judge's jury instructions does not disclose that the jury was advised that the rebuttal testimony was for the limited purpose of impeaching the credibility of the appellant and his wife. If the jury had been so instructed, the rebuttal evidence was, nevertheless, not properly admissible even for that limited purpose because it did not serve to rebut any defense evidence.

At the outset we said that this case would be reversed on the strength of *Dobson v. State, supra.* In *Dobson,* 24 Md. App. at 660-61, 335 A. 2d at 133-34, we opined:

"The general rule is that in the trial of a criminal case, evidence showing that the accused has committed other independent crimes is not admissible for the purpose of proving guilt or of showing that because a person committed one

crime, he is likely to have committed the offense charged. 1 *Wharton's Criminal Evidence,* . . . § 240 [(13th ed. C. Torcia 1972)]. 'Evidence of other crimes is irrelevant where it does not tend to prove some material fact in connection with the crime charged, or where it merely tends to show that the defendant is a criminal.' *See also Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955); *Wood v. State,* 191 Md. 658, 62 A. 2d 576 (1948); *Jennings v. State,* 8 Md. App. 312, 259 A. 2d 543 (1969). Of course, evidence of prior criminal acts is admissible if it tends to show a common scheme, plan, design, motive, intent or identity. *Wilson v. State,* 8 Md. App. 653, 262 A. 2d 91 (1970)." (Footnote omitted).

In our view, evidence of a single alleged prior abortive attempt to rape, if true, does not demonstrate the "common scheme, plan, design, motive, intent or identity" required by *Wilson v. State, supra,* nor can we say that the rebuttal evidence indicating that the appellant at some time before or after the instant offense set about to have forced carnal connection with the rebuttal witness, " . . . tend[s] to prove some material fact in connection with the crime charged," 1 *Wharton's Criminal Evidence* § 240 (13th ed. C. Torcia 1972). We are unpersuaded by the State's argument that such evidence bolsters the prosecutrix's testimony that she did not consent or that the appellant, in this case, used a knife. All we can glean from the rebuttal witness's evidence is that she did not consent and that the appellant had a "box cutter" type of knife at the time he endeavored to force her to submit to his will. We think, as we said in the beginning, that the rebuttal witness's " . . . narration was adduced for the purpose of demonstrating that the appellant was a bad man, a criminal, and thus likely to have committed the offenses for which he was indicted." *Dobson v. State,* 24 Md. App. at 661, 335 A. 2d at 134. The evidence was inadmissible. It was error of such magnitude that a reversal is required.

Appellant further has attacked the trial judge's advisory instructions to the jury. We need not and do not reach that issue in view of our disposition, but, in any event, the

correctness, *vel non,* of the instruction is not properly before us by reason of the failure of appellant to note any exceptions to the instruction. Thus, under Md. Rule 756 g the question has not been preserved for our review.

*Judgment reversed.*
*Case remanded for a new trial.*