719 So.2d 1037 (1998)
STATE of Louisiana
v.
Michael McARTHUR.
No. 97-K-2918.
Supreme Court of Louisiana.
October 20, 1998.
*1038 Thomas E. Guilbeau, Lafayette, for Applicant.
Richard P. Ieyoub, Atty. Gen., Robert Rick Bryant, Dist. Atty., Frederick W. Frey, Mike Stratton, for Respondent.
VICTORY, Justice.[*]
We granted a writ of certiorari in this case to determine whether evidence of the defendant's other crimes involving nonconsensual sexual conduct is admissible as evidence in his prosecution for aggravated rape, aggravated kidnapping, and aggravated crime against nature against an adult victim where the defendant admits the sexual act charged against him but claims the victim consented.

FACTS AND PROCEDURAL HISTORY
According to the victim's testimony, on October 19, 1993, defendant flagged down the victim as she was driving and asked her for a ride. The victim stopped and gave defendant a ride to a local store. After buying gas for her car at the store, defendant hit her and told her to pull over. He then took the wheel and held the victim's face in his lap, threatening to slice her neck with a knife if she moved. After defendant drove the car through a ditch and stopped, he dragged the victim out of the car to an open area and forced her to perform oral sex. Afterward, defendant, still hitting and threatening the victim, forced her to have both anal and vaginal sex. Defendant then drove the victim to a second location where he hit the victim again, threatened her with a tire iron and forced her to have sexual intercourse again. Defendant left on foot and the victim drove home where she told her mother about the incident. The victim's mother and a friend testified that the victim had bruises on her face and was bleeding and that her car had grass and leaves all over it. The emergency room nurse testified that the victim had swelling on her right cheek and a scratch on one of her thighs.
Defendant claimed that while he did have sex with the victim, it was consensual in exchange for drugs. Other defense witnesses stated they saw defendant and the victim together not only on the night in question but on several occasions before that night, and that they sold drugs to the victim and defendant in the weeks and months preceding the alleged rape.
Prior to trial, the state gave notice that it would seek to introduce evidence from three individuals defendant allegedly sexually assaulted in the past in order to show motive, intent, and plan. After holding a Prieur hearing, the trial court denied evidence from one of the witnesses, but ruled that testimony from Bobbie Molitar and Nonie Lofton was admissible.
Molitar testified that while incarcerated with defendant in 1994 at the Calcasieu Correctional *1039 Center, defendant told him he could help him with his case. Molitar entered defendant's cell and as the two began to talk, defendant asked Molitar if he could "check [him] out." Defendant then pulled Molitar's arm behind his back, leaned him against the toilet with his knee against him and began pulling Molitar's pants down. Defendant then took out his penis and tried to penetrate him. Molitar finally got loose and left the cell.
Lofton testified that she had a date with defendant when she was a college student at McNeese State in 1978. After dinner, a movie, and drinks at two bars, they agreed to go dancing at another bar. Instead, defendant drove on a back country road to an isolated location and made a number of unwanted advances toward her. She resisted but defendant persisted until he succeeded in removing her pants and underwear. He rolled her over on her stomach and unsuccessfully attempted to enter her from the rear. After he stopped attempting to penetrate her, she turned around and noticed he was ejaculating in what appeared to be a T-shirt. She grabbed her pants and underwear, put them back on and got out of the car. Defendant then put on his clothes, apologized, and took her back to her dormitory.
Defendant unsuccessfully sought pretrial supervisory review of the admissibility of Molitar and Lofton's testimony. State v. McArthur, 96-847 (La.App. 3rd Cir.8/7/96), writ denied, 96-2237 (La.11/15/96), 682 So.2d 772. At trial, defendant was found guilty of the lesser included offenses of forcible rape, second degree kidnapping, and crime against nature.
The court of appeal affirmed the convictions, State v. McArthur, 97-597 (La.App. 3rd Cir.10/29/97), 702 So.2d 1047, holding that the incidents with Molitar and Lofton were "sufficiently similar to show a pattern and intent, or `lustful disposition,' on defendant's part to lure acquaintances into situations where he could force them with brute force into nonconsensual sex acts" and found the evidence to be relevant because the defendant claimed the instant victim consented to the sexual acts, thereby placing her credibility at issue. 702 So.2d at 1053. We granted defendant's writ solely to consider whether the other crimes evidence was properly admissible. State v. McArthur, 97-K-2918 (La.4/9/98), 717 So.2d 1136.

DISCUSSION
We recently reviewed the basic statutory and jurisprudential rules concerning the admissibility of "other crimes" evidence at trial in State v. Miller, 98-KK-0301 (La.9/9/98), 718 So.2d 960. Article 404(B) of the Louisiana Code of Evidence provides in pertinent part:
(1) Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
In addition, jurisprudential rules have been established. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state is required to prove the defendant committed these other acts by clear and convincing evidence.[1]Id.; State v. Davis, 449 So.2d 466 (La.1984). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements *1040 set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met. Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense responsive to it.
In affirming the trial court's ruling, the court of appeal relied on its earlier opinion in State v. Crawford, 95-1352 (La.App. 3rd Cir. 4/3/96), 672 So.2d 197, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379, in holding that the judicially created "lustful disposition" exception applied in this case. In State v. Crawford, the Third Circuit held admissible four acts of violence against four unrelated women, one of whom was purportedly raped. The Crawford court found that the prior sex offenses were not so similar as to produce a distinct modus operandi, but found the evidence was properly admitted because it showed "a pattern and intent or `lustful disposition' on defendant's part to force women, with either a knife or through strangulation and brute force, to engage in nonconsensual sex." 672 So.2d at 210.
The court of appeal erred in applying the "lustful disposition" exception, which can only be applied in certain cases involving sex crimes against children. See State v. Miller,[2]supra (explaining the policy reasons behind allowing the admission of other sex crimes against children in child sexual abuse cases); see also State v. Jamison, 617 So.2d 480 (La.1993); State v. Bailey, 588 So.2d 90 (La. 1991); State v. Acliese, 403 So.2d 665 (La. 1981); State v. Jackson, supra; State v. Cupit, 189 La. 509, 179 So. 837 (1938). Because this case does not involve child sexual abuse, the court of appeal erred in admitting the evidence under the "lustful disposition" exception.
At the Prieur hearing, the state represented that it was introducing the other crimes evidence to prove motive, intent, or plan under Article 404(B). The court of appeal found that the evidence was admissible to prove "pattern and intent or lustful disposition."
Under Article 404(B), other crimes evidence is admissible to prove intent. "This Court has recognized the principle that where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed." State v. Jackson, supra at p. 150 (citing State v. Cupit, supra, 179 So. at 839). Although specific intent is not an element of aggravated rape[3], the state contends that because defendant claims that the victim consented, the fact that he has attempted to rape others in the past is relevant to show that he intended to have sexual intercourse with this victim without her consent.
In State v. Hatcher, we addressed this very issue. 372 So.2d 1024, 1034, n. 1 (La. 1979) on rehearing.[4] There we stated:

*1041 Where the only issue in a prosecution for rape is that of consent, other offenses are usually held to be inadmissible. See, 2 Wigmore, Evidence (Supp.1977). See, e.g., Lovely v. United States, 169 F.2d 386 (4th Cir.1948); State v. Beaulieu, 116 R.I. 575, 359 A.2d 689 (1976); Setzer v. State, 29 Md.App. 347, 348 A.2d 866 (1975); State v. Davis, 239 S.C. 280, 122 S.E.2d 633 (1961). The lack of consent by other victims is not probative of lack of consent by the complainant of the charged offense. Lovely v. United States, supra at 390.
Id., 372 So.2d at 1034, n. 1. Consistent with that principle, in State v. Ledet, we held that evidence of a prior rape against a different victim was inadmissible in an aggravated rape trial with a consent defense to prove intent because specific intent is not an element of aggravated rape. 345 So.2d 474, 479 (La.1977) ("when there is no contest at all over the participation of the accused in the alleged incident, but the only question is whether any crime at all took place, evidence of extraneous offenses surves [sic] only to establish that defendant is capable of and thus likely to have committed the crime in question, and as such the evidence is inadmissible").
This case is distinguishable from State v. Talbert, 416 So.2d 97 (La.1982) in which we held that the defendant's prior rape of the same victim was admissible to prove the "defendant's intent to have intercourse without the victim's consent." 416 So.2d at 100. To the contrary, in this case, a prior victim's lack of consent is irrelevant to the present victim's consent or lack of consent. Thus, the other crimes evidence is inadmissible in this case to prove intent.[5]
At the Prieur hearing, the state also contended the evidence was relevant to prove motive. "`Motive' evidence reveals the state of mind or emotion that influenced the defendant to desire the result of the charged crime." D. Bryden and R. Park, "Other Crimes" Evidence in Sex Offense Cases, 1994 Minn. L.Rev. 529, 541. Although the state has no burden to prove motive, it argues that the other crimes evidence shows defendant's motive to force his victims into having nonconsensual sex, i.e., rape and crime against nature. However, the other crimes evidence does not fit the requirements for the motive exception. "In order to have independent relevance, the motive established by the other crimes must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime." State v. Sutfield, 354 So.2d 1334, 1337 (La.1978) (evidence of heroin addiction inadmissible to show the motive for armed robbery); see also State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190 (evidence that defendant told *1042 four people that he had killed the decedent because she accused him of raping her after they had sexual intercourse was admissible to show his motive to commit murder). If, as in this case, the other crimes evidence does not tend to show a motive to commit this particular crime against this particular victim, it merely shows a character trait and is inadmissible character evidence.
The state also claims the evidence is admissible to prove "plan." "Plan" can "refer to a plan conceived by defendant in which the commission of the uncharged crime is a means by which defendant prepares for the commission of another crime ...," such as "Wigmore's example of stealing a key in order to rob a safe," or it may "refer to a pattern of crime, envisioned by defendant as a coherent whole, in which he achieves an ultimate goal through a series of related crimes," such as "acquiring a title by killing off everyone with a superior claim." Bryden and Park, supra, 78 Minn. L.Rev. 529, 546. The evidence in this case fails to meet the plan exception.
Accordingly, we conclude that the other crimes evidence is inadmissible under all of the theories advanced by the state, including "lustful disposition," motive, intent, and plan. Notably, the following statement from the state's closing argument reveals that the other crimes evidence was really introduced to show defendant's bad character:
He attempted to rape two other people ... it helps you know what kind of person he is. (Emphasis added).
As we stated in State v. Moore:
"[r]ape is a horrible crime, committed by bad men. If the defendant committed such an offense before, it is too easy to believe that he is a bad man, and capable of the act with which he stands accused.
...
However, in spite of the prejudicial nature of evidence of other offenses, criminal cases cannot be tried in an antiseptic vacuum. Matters which are logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses. Nevertheless, even if relevant, because the evidence of other offenses is so strongly prejudicial "the greatest care ought to be taken to reject such evidence, unless it is plainly necessary to prove something which is really in issue." R. v. Bond (1906) 2 K.B. 389, 417.
278 So.2d 781, 787-788 (La.1972). Because the other crimes evidence here is not independently relevant to prove a material issue, it is inadmissible.
We must note that although Article 404 of the Louisiana Code of Evidence was modeled after Rule 404 of the Federal Rules of Evidence, the federal rule has been replaced by Rule 413(a) in sexual assault cases. Federal Rule 413(a) provides that "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."[6] The new rules reflect the considered judgment of Congress that cases of sexual assault require *1043 particularized evidentiary rules because "[u]nlike other crimes, the defendant may raise consent as a defensereducing the trial to a `swearing match' and diffusing the impact of even DNA evidence." United States v. Enjady, 134 F.3d 1427, 1431 (10th Cir.1998). However, in our current law found in Article 404 of the Louisiana Code of Evidence, the legislature prohibits the use of other crimes evidence "to prove the character of a person in order to show that he acted in conformity therewith" unless it meets one of the exceptions stated in Article 404(B) or is otherwise recognized by law. Unless and until the legislature changes our statutory law to follow Rule 413(a) of the Federal Rules of Evidence, we will continue to apply the law as it presently exists.
Because the admission of the other crimes evidence was erroneous, we must determine if this error was harmless. See State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94 (erroneous admission of other crimes evidence is subject to harmless-error analysis under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).[7] Given the "numerous inconsistencies" in the victim's testimony acknowledged by the court of appeal and the testimony from defense witnesses about the relationship between the victim and defendant and their history of drug use together, we cannot say that the court's error in admitting the evidence was harmless beyond a reasonable doubt and the jury verdict was surely unattributable to the error.

CONCLUSION
The judicially created "lustful disposition" exception to Article 404 of the Louisiana Code of Evidence only applies in certain cases involving child sexual abuse. Furthermore, the "other crimes" evidence in this case does not fit under the intent, motive, or plan exceptions listed in Article 404(B). Therefore, the other crimes evidence was erroneously admitted and the error was not harmless.

DECREE
For the reasons stated herein, the decisions of the trial court and court of appeal admitting other crimes evidence against defendant are reversed and defendant's convictions and sentences are vacated. The case is remanded to the trial court for a new trial consistent with this opinion.
REVERSED; CONVICTIONS AND SENTENCES VACATED; REMANDED FOR NEW TRIAL.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Article 1104 of the Louisiana Code of Evidence was added in 1994 to provide that "[t]he burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." This Court has not yet addressed the extent to which Article 1104 and the burden of proof established in Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) has affected the burden of proof required for the admissibility of other crimes evidence.
[2] In State v. Miller, we held that a prurient and highly inappropriate statement made to a young girl was independently relevant to show defendant's lustful disposition towards young girls and thus his specific intent to sexually molest his eight and 11-year-old nieces. Slip Op. at 13-14.
[3] See La. R.S. 14:42 and State v. Ledet, 345 So.2d 474, 478 (La.1977).
[4] Hatcher involved a scheme in which the defendant, posing as a talent scout, lured young women to secluded locations and forced them to remove their clothing, after which he photographed them naked, raped them and forced them to perform fellatio. Although charged with forcible rape and aggravated crime against nature involving one of four victims who testified at trial, the defendant was convicted only of the latter crime after the jury in part rejected his defense that the victim had consented to sexual intercourse and that the alleged act of oral sex had never taken place. Given the jury's verdict, the issue as to the charge of aggravated crime against nature was whether the oral sex occurred at all. The Court concluded that evidence of the defendant's other, virtually identical crimes, was admissible to prove that the act of fellatio had occurred, reasoning that:

the other crimes evidence was relevant for some other purpose than to show a probability that [defendant] committed the crime of trial because he is a man of criminal character who has a propensity for this type of offense. The evidence was also relevant to prove that the defendant had a design, plan, system or scheme directed toward forcing young women to perform fellatio, as manifested by his particularly distinctive modus operandi, and did carry it out on the instance on trial. We are fortified in this conclusion because ... in the instant case "the very doing of the act" was a genuine issue at trial and the charged and uncharged offenses were not merely similar; there was "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individualized manifestations.
372 So.2d at 1034 (on rehearing) (quoting 2 Wigmore, Evidence, § 304). However, the Court noted that "if the defendant had been prosecuted only on the forcible rape charge and convicted, the introduction of the other crimes evidence more than likely would have constituted reversible error." Id.
[5] While specific intent is not required for an aggravated rape conviction, specific intent is required to prove aggravated kidnaping. However, we find that the circumstances of the prior incident where one of the other crimes victims voluntarily went on a date with defendant in his car 15 years prior to the instant offense and defendant attempted to rape her while on the date are not sufficiently similar to the circumstances of the instant offense in which the victim claims that she gave defendant a ride and defendant forcibly took over the wheel and drove her to a location where he threatened her with a weapon and raped her, then drove her to another location and raped her again. Obviously, the attempted jail house homosexual rape is not sufficiently similar to be relevant either. In neither of the other crimes are the elements of aggravated kidnapping present.
[6] The comments of Federal Rule 413's principal sponsor outline the policy reasons for the new rule in adult-victim sex crime cases as follows:

Similarly, adult-victim sexual assault cases are distinctive, and often turn on difficult credibility determinations. Alleged consent by the victim is rarely an issue in prosecutions for other violent crimes ... but the defendant in a rape case often contends that the victim engaged in consensual sex and then falsely accused him. Knowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of these claims and accurately deciding cases that would otherwise become unresolvable swearing matches.
140 Cong. Rec. H. 89091-92.
On the other hand, commentators have identified two reasons why special evidentiary rules should not be created in adult-victim sex crime cases:
(1) that "by applying a special rule in such cases, Congress contravenes the basic premise that evidentiary rules focus on issues common to all trials and do not develop differently for each substantive crime;" and
(2) that "the legitimate desire to minimize sexual violence has produced a rule that imperils the presumption of innocence by inviting jurors to convict accused rapists for who they are, rather than for what they have done."
M. Sheft, Federal Rule of Evidence 413: A Dangerous New Frontier, 33 Am.Crim. L.Rev. 57, 58 (1995).
[7] Under Chapman, an appellate court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Id., 386 U.S. at 24, 87 S.Ct. at 828. The reviewing court must therefore be able to say that the jury's verdict in the particular case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272.