**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**24-318**

**STATE OF LOUISIANA**

**VERSUS**

**STEPHEN DOUGLAS CORMIER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 3629-22
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Stephen Douglas Cormier**

**Stephen C. Dwight**
**District Attorney**
**John Eric Turner**
**Assistant District Attorney**
**Post Office Box 3206**
**Lake Charles, LA   70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF AP**
    **State of Louisiana**

**PERRET, Judge.**

Defendant was convicted of second degree sexual battery, second degree kidnapping, and mingling harmful substances. On appeal, he asserts the trial court erred in admitting evidence of other crimes, wrongs, or acts and erred in denying his motion for mistrial following the State's opening arguments. On appeal, we affirm. However, the trial court is ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

**PROCEDURAL BACKGROUND:**

On March 2, 2022, Defendant, Stephen Douglas Cormier, was charged by bill of information with the second degree sexual battery of E.M.,[1] in violation of La.R.S. 14:43.2; second degree kidnapping of E.M., in violation of La.R.S. 14:44.1; mingling harmful substances, in violation of La.R.S. 14:38.1; and theft between five thousand and twenty-five thousand dollars, in violation of La.R.S. 14:67(B)(2). On November 20, 2023, count four of the bill of information was amended to theft between one thousand and five thousand dollars, in violation of La.R.S. 14:67(B)(3).

On July 14, 2023, the State filed "State's Notice of Intent to Offer Evidence of Defendant's Other Crimes, Wrongs, or Acts Under LA. C.E. Art. 412.2," seeking introduction of videos found on Defendant's phone where he appears to sexually assault an unconscious woman while he is driving. On November 20, 2023, a hearing was held on the admissibility of those videos. Following argument, the trial

---

[1] This court refers to the victim by her initials in accordance with La.R.S. 46:1844(W).

court deemed the evidence admissible under La.Code Evid. art. 412.2, which allows for the admission of similar other crimes in sex offense cases.

Trial began on November 20, 2023, and on November 21, 2023, a jury unanimously found Defendant guilty as charged of second degree sexual battery, second degree kidnapping, and mingling harmful substances. Defendant was found not guilty of theft.

On January 12, 2024, Defendant filed "Defendant's Motion for New Trial," in which he alleged the verdict was contrary to the law and evidence and that the ends of justice would be served by granting a new trial. A hearing was held on Defendant's motion on January 18, 2024, at which time the trial court denied the motion for new trial. On January 19, 2024, Defendant was sentenced to "99 years on second-degree sexual battery; 40 on the kidnapping; and 5 on the mingling. Those are to run concurrent[ly], without benefit."

After Defendant filed his Appellant brief and noted errors patent in regard to his sentences, the trial court held a hearing on August 14, 2024, to clarify Defendant's sentence. Therein, the trial court stated that the ninety-nine-year sentence was to be at hard labor; that the entire forty-year sentence was to be served without benefit of probation, parole, or suspension of sentence; and Defendant's sentence for mingling harmful substances was modified to two years at hard labor without benefits.

Defendant now appeals, raising a single, two-part assignment of error:

The trial court erred in granting the State's Notice of Intent to Offer Evidence under La.Code Evid. art. 412.2, thereby admitting prejudicial uncharged and unadjudicated alleged criminal wrongs or acts into evidence, and in denying Defense counsel's Motion for Mistrial, thereby violating Mr. Stephen Cormier's constitutional right to cross-examine the witnesses against him regarding said evidence.

2

For the reasons set forth below, after review, Defendant's convictions are affirmed as well as his sentences for second degree kidnapping and mingling harmful substances.

**FACTS:**

Evidence adduced at trial established that on October 5, 2021, E.M. went to the Golden Nugget Casino in Lake Charles, Louisiana, alone. E.M. was drinking and playing blackjack. She encountered Defendant, whom she had met at the casino before, once in August that same year. Later, video surveillance from the casino showed Defendant buy two shots from the bar. Defendant can be seen pulling out something from his pocket, pouring it into one of the glasses, and then mixing it into one of the shots. He places a glass down next to E.M. and she proceeds to drink the shot. Shortly thereafter, E.M. became so unsteady she could barely stand or walk, requiring the assistance of Defendant. Defendant removed her from the casino floor and led her towards the doors. However, E.M. appears to reenter and pull away from Defendant, attempting to return to the casino floor. E.M. was denied reentry and Defendant, claiming to be her boyfriend, led her out of the casino.

E.M.'s boyfriend at the time attempted to contact her and, after failing to do so, went to the casino to look for E.M. He found her vehicle in the parking garage but E.M. was not inside. He also could not locate E.M. inside of the casino. Later, E.M.'s mother went to the casino in search of E.M. and found her sleeping inside her car, extremely lethargic. Her boyfriend, who had returned to the casino at this time, testified that E.M.'s vehicle was parked on the same floor of the parking garage, but in a different parking spot than it was when he located the vehicle earlier that day. E.M.'s boyfriend drove her vehicle from the casino and testified that he noticed the seat was pushed back in a way that E.M. did not normally keep the chair,

3

and that she would not have been able to reach the pedal or steering wheel from that pushed back position. E.M. subsequently went to the hospital and a sexual assault examination was performed. Surveillance from the casino parking lot showed Defendant leave in his car, return, leave in E.M.'s car, then return the car with E.M. inside, and then leave again in his car.

It was subsequently discovered that Defendant took E.M. to the home of Ms. Michelle Blackburn, who had asked Defendant to care for her cat while she was out of town. There, Defendant took photographs of E.M., naked from the waist down, and sexually assaulted her. The photographs were recovered from Defendant's phone. According to E.M., she did not remember anything between Defendant giving her the shot and waking in the hospital talking to law enforcement.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one possible error patent and one error patent. While Defendant's brief identified several errors patent, most of those errors were corrected at a clarification hearing held August 14, 2024.

At the original sentencing hearing held January 19, 2024, the trial court imposed the following sentences: "And so I am going to impose the maximum sentence on all of the three charges that he was found guilty of. 99 years on second-degree sexual battery; 40 on the kidnapping; and 5 on the mingling. Those are to run concurrent[ly], without benefit."

After an order of appeal was entered and after Defendant filed his brief, the State filed a Motion and Order for Correction of Illegal Sentence and Request to Clarify Sentence, which was heard on August 14, 2024. The State informed the trial

4

court: "Judge, it has come to the attention from the appeals court that there are some things that just need to be clarified on the record in regards to the sentencing of Mr. Cormier." While it is not clear what information the State received "from the appeals court," Defendant discussed sentencing errors in his brief. This briefing seems to have triggered the filing of the above motion by the State. Pursuant to La.Code Crim.P. art. 916(3), after the entering of an order of an appeal, the trial court still maintains jurisdiction "[t]o correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence." Since the clarification hearing resulted in the correction of illegal sentences, we find that jurisdiction in the trial court was proper.

In brief, Defendant asserts several errors patent regarding the original sentences imposed. He alleges that the sentence for second degree sexual battery (count one) was indeterminate as the trial court failed to "specifically state that at least twenty-five years, or all of the sentence imposed, would be served without benefits." As for the sentence imposed for second degree kidnapping (count two), Defendant alleges the entire sentence was imposed without benefits. While Defendant notes that the minutes for count two state that the first two years were imposed without benefits, he contends that the transcript prevails. Finally, Defendant alleges the sentence imposed for mingling harmful substances (count three) was illegally excessive.

At the clarification hearing, the State first informed the trial court that the ninety-nine-year sentence for second degree sexual battery (count one) was not imposed at hard labor. The trial court clarified that the ninety-nine-year sentence was to be served at hard labor.

5

Regarding the forty-year sentence imposed for second degree kidnapping (count two), the State asserted that the trial court failed to clarify the portion to be served without benefits. The trial court responded, "The entire 40 is served without benefit." The trial court also stated the sentence for count two was to be served at hard labor.

Regarding the five-year sentence imposed for mingling harmful substances (count three), the State asserted that it incorrectly informed the court that the sentencing range was zero to five years when, in fact, it is zero to two years. Thus, the maximum sentence for that offense is two years. The trial court then imposed a sentence of two years at hard labor on count three. Although the trial court then stated the sentence for count three was to be served "without benefit[,]" the State informed the trial court that the sentence for count three was to be served "with benefit." The trial court then corrected the sentence for count three to be with benefits.

The trial court once again ordered all sentences to run concurrently. The trial court also stated that it had imposed the "harshest sentence, other than not running it consecutively[.]"

Thus, we now review the record for errors patent following the clarification of sentences by the trial court. Upon review, we note that the trial court did not clarify the restriction of benefits on second degree sexual battery (count one). In brief, the State asserts that the entire sentence for count one, like count two, was imposed without benefit of probation, parole, or suspension of sentence. At the original sentencing hearing, the trial court imposed the terms of imprisonment for each count, then stated they were "to run concurrent, without benefit." At the clarification hearing, the trial court did not state that the sentence imposed for count

6

one was to be served without benefits as it did for count two.

Based on the language used at the original sentencing hearing, we conclude that the trial court's statement "without benefit" applied to all counts; thus, the sentence imposed for count one is determinate. Clearly, the trial court was referring to all counts when it stated, "to run concurrent" and the very next statement, "without benefit," likewise refers to all counts. Furthermore, a statement that a sentence was imposed "without benefit" has been upheld even though it does not delineate the benefits restricted. *See State v. Disedare*, 19-810 (La.App. 3 Cir. 5/13/20), 298 So.3d 342, *writ denied*, 20-800 (La. 12/22/20), 307 So.3d 1041. In addition, the trial court stated at the clarification hearing that it had imposed the harshest possible sentences, indicating that it intended for the entire sentence imposed for count one to be served without benefits. Accordingly, we find no error patent.

Next, although the minutes of the original sentencing hearing indicate the trial court advised Defendant of the prescriptive period for filing post-conviction relief, neither the transcript of sentencing nor the transcript of the clarification hearing indicate the trial court advised of such. Therefore, the trial court is ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *See State v. Viltz*, 18-184 (La.App. 3 Cir. 11/28/18), 261 So.3d 847 (citing *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163).

Lastly, Defendant asserts as an error patent the trial court's failure to consider any of the sentencing factors in La.Code Crim.P. art. 894.1. Defendant contends that because the trial court failed to consider the 894.1 factors, "there is nothing for

this Honorable Court to review in determining whether the maximum sentences the court intended to impose upon Mr. Cormier are constitutionally excessive" and "requires that his sentences be vacated and remanded to the trial court for resentencing." However, the trial court's failure to consider the 894.1 guidelines is not an error patent recognized by this court.

## ASSIGNMENT OF ERROR:

Defendant's brief sets forth a single assignment of error; however, it contains two separate claims: (1) the trial court erred in admitting other crimes evidence under La.Code Evid. art. 412.2, and (2) the trial court erred in denying the motion for mistrial. We will address the two claims separately.

### *La.Code Evid. art. 412.2 Videos*

The State sought to admit videos as other crimes, wrongs, or acts evidence pursuant to La.Code Evid. art. 412.2, which states:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
>
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
>
> C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

In the instant case, Defendant was charged with mingling harmful substances that he then gave to E.M., moving her to a different location when she was unable to resist him, and sexually assaulting her while she was incapacitated. The videos

8

the State sought to introduce were discovered on Defendant's phone after authorities extracted its data. The videos were of a female in the passenger seat of vehicle being driven by Defendant. The woman was later identified as "D.H."[2] The woman's eyes are closed, and, at one point, a straw is hanging out of her mouth. She is naked from the waist down, as is Defendant. Defendant digitally penetrates her in the video.

The hearing on the State's notice of intent regarding the videos was held immediately prior to trial. We note that the record indicates the State filed the notice at issue filed pursuant to La.Code Evid. art. 412.2 for admission of the videos, but also filed a motion in limine pursuant to La.Code Evid. arts. 412 and 412.1 to prohibit discussion of the victim's sexual history and reputation. At the hearing, defense counsel initially argues, regarding the victim's history and reputation, that there is an exception under La.Code Evid. art. 412(A)(2)(a) that allows such evidence to be admitted when there is an issue as to whether the accused was the source of injury, which defense counsel contended was an issue in the case. Defense counsel's argument regarding La.Code Evid. art. 412(A)(2)(a) seems to have been related to the State's invocation of the "rape shield" law found in La.Code Evid. arts. 412 and 412.1. Louisiana Code of Evidence Article 412(A)(2)(a) is irrelevant to the discussion regarding the videos, however, which were admitted under La.Code Evid. art. 412.2.

Counsel then put forth the following argument regarding the video:

> The video, I would suggest to the Court, is irrelevant. It's probative - - well, it's more prejudicial than anything. Now, most of the cases that the research cites with regards to 412 indicates that the Court must look to see if the evidence is probative. Here the courts have looked at the circumstances and mostly have taken evident [sic] as to what the evidence is. Here the evidence is going to be a video.

---

[2] Both the State and Defendant refer to the woman from the videos as "D.H."; accordingly, and in the spirit of La.R.S. 46:1884(W), we have done the same.

Now, that video does not indicate the closeness of similarities. As a matter of fact, most of the cases talk about differences. You have to have testimony in order to make the connection between the video and what's before you today. What do I mean by that? There I particularly mean that you have to have testimony as it relates to the offenses that are required under the charge. That video that you're going to look at and see involves a lady allegedly with some type of prior claim of crime going on by defendant. We don't know if she, like in the allegations here, we don't know if she's under influence [sic] of [] substances, we don't know if she's under the influence of alcohol, we don't know if there is consent. So, you have the [sic] weigh the prejudice that it will cause the jury to be lured in finding [sic] a guilty plea or a guilty finding merely because of the tape, and the Supreme Court has said that in your weighing and balancing you must consider the affects [sic] it's going to have on the jury. Will the jury say, yes, he's guilty here today because we saw the tape? If that's the case you have to keep it out.

So, we don't know the connexity of the circumstances with regards to the tape and the trial here today. I submit to the Court that it is prejudicial to my client and will cause an unfair evaluation by the jury, and that's an evaluation that you must make.

Now, moving beyond that particular thing, I reiterate the fact that under one of these exceptions under 412 we are going to argue that we have an exception under 412.A(2)(a). So, those considerations you have to take into consideration when you make your ruling.

The discussion continued:

THE COURT:
    Any reply?

MS. BUFORD:
    Your Honor, again, yes, I do see what defense counsel is arguing under 412(A)(2)(a), but when it comes to the videos that are going to be viewed, Judge, this talks about the assaultive behavior that the defendant pulled and that he does and you'll see very much is relative and similar to the crime that we are here for today –

    . . . .

    -- In regards to an unconscious woman and the defendant violently and digitally penetrating this woman while she is passed out in the vehicle. That is what we are here for today in regards to the victim in this case, who was unconscious and sustained injuries to her genital area while she was with the defendant, when the defendant took her to another apartment complex. This is exactly the same assaultive behavior and that's what 412.2 here is for, is to show the assaultive

> behavior or the sexuality [sic] assaultive behavior of the defendant, of the accused.

THE COURT:
> I'm granting the motion for that evidence to be admitted.[3]

Thus, at the hearing, defense counsel argued regarding the dissimilarities between the circumstances leading to the video sought to be introduced and the circumstances involved in the instant case. Likewise, Defendant on appeal argues the circumstances are different regarding how the woman in the videos, D.H., ended up incapacitated and where she was sexually assaulted.[4] After review, and for the following reasons, we find that this argument lacks merit.

On appeal Defendant argues that these dissimilarities mean the State failed to meet the requirements of admitting the videos under case law involving *modus operandi*. Defendant contends that because there was no evidence of mingling harmful substances regarding D.H., no evidence of kidnapping, no evidence that D.H. did not give consent, and because the assault happened in his car and not someone else's home like in the instant case, the situations are dissimilar. Thus, the videos should not have been introduced because "[t]he probative value of these uncharged and unadjudicated offenses of alleged sexual abuse was clearly outweighed by its prejudicial effect."

Defendant cites case law on *modus operandi*, however, the cases cited do not relate to whether evidence of other crimes is admissible under La.Code Evid. art. 412.2. We find that because the videos were introduced under La.Code Evid. art. 412.2, this argument lacks merit as the State does not need to show the situations are

---

[3] It is unclear whether the videos were viewed by the trial court prior to the ruling.

similar the way it would have needed to do to introduce the videos under La.Code Evid. art. 404.

Louisiana Code of Evidence Article 412.2(A) states: "evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior . . . may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403." Simply, evidence of other crimes or acts involving sexually assaultive behavior is admissible in cases where the defendant is accused of sexually assaultive behavior. In *State v. Wright*, 11-141, pp. 12–13 (La. 12/6/11), 79 So.3d 309, 317 (footnote omitted), the supreme court expressly addressed the fact that a situational similarity is not required for admission of evidence under La.Code Evid. art. 412.2:

> Further, in enacting Article 412.2, the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility. We have previously examined the legislative history behind the Article in *State v. Williams,* 02–1030 (La.10/15/02), 830 So.2d 984. In *Williams,* this Court noted the enactment of the Article was prompted primarily by two decisions of this Court, *State v. McArthur,* 97–2918 (La.10/20/98), 719 So.2d 1037, and *State v. Kennedy,* 00–1554 (La.4/3/01), 803 So.2d 916. Both cases involved prosecutions for aggravated rape in which the State sought to introduce evidence of other sexual offenses committed by the defendants pursuant to what the State labeled a "lustful disposition" exception to other crimes evidence. In both cases, this Court refused to recognize the so-called "lustful disposition" exception to Article 404's other crimes prohibition, but, in doing so, noted that the evidence sought to be introduced would be admissible if Louisiana had a rule similar to Federal Rule of Evidence 413. This Court stated "the enactment of Article 412.2 was apparently the legislature's response to this Court's statements in *McArthur* and *Kennedy* as the language of Article 412.2 closely follows that of Federal Rule of Evidence 413." *Williams,* 830 So.2d at 986. Thus, Article 412.2 was enacted to loosen restrictions on "other crimes" evidence, and to allow evidence of "lustful disposition" in cases involving sexual offenses.

As noted in *Wright*, 79 So.3d at 316: "A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Cosey,* 97-

12

2020 (La.11/28/00), 779 So.2d 675, 684. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2." The videos admitted at trial, taken from Defendant's phone pursuant to a warrant, clearly show Defendant sexually assaulting a woman who is unconscious and nonresponsive. We cannot conclude that the trial court abused its discretion when it admitted these videos, when he is currently charged with drugging a different woman, taking her to a different location while she was unconscious, and sexually assaulting her.

Defendant's remaining argument regarding the introduction of the videos is that they should not have been permitted because they fail the balancing test of La.Code Evid. art. 403, which states relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Defendant argues that due to the alleged dissimilarities of the video and the offense at issue coupled with the fact that the videos "were not relevant for the State to prove their case," "[t]he probative value of these uncharged and unadjudicated offenses of alleged sexual abuse was clearly outweighed by its prejudicial effect." Defendant asserts such evidence should be rejected "unless it is plainly necessary to prove something which is really in issue" quoting *State v. McArthur*, 97-2918, p. 4 (La.1998), 719 So.2d 1037, 1042. We disagree. As previously noted, a trial court's ruling on admissibility of evidence under La.Code Evid. art. 412.2 is reviewed for abuse of discretion. The videos possessed probative value under La.Code Evid. art. 412.2 because they show Defendant is willing to take advantage of an unconscious woman by sexually assaulting her, the very thing he was charged with doing to E.M. Given the similarity between what Defendant was

13

alleged to have done to E.M. in the present case, what he recorded himself doing to D.H. while she was unconscious, and the trial court's instruction that Defendant may not be found guilty merely because he committed another offense, we cannot say the trial court abused its discretion.

*Denial of Motion for Mistrial*

The second half of Defendant's assignment of error is that the trial court erred in denying his motion for mistrial. Defendant contends that "[t]he failure to allow Defense counsel the opportunity to cross-examine D.H. substantially affected the fairness of the proceedings and the reliability of her testimony." According to Defendant, this violated his right to confront the witnesses against him in violation of the Sixth Amendment of the United States Constitution and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).

Defendant's motion for mistrial was made after the State's opening argument. The alleged offending comments during the State's opening argument were as follows:

> Also, in that extraction detectives saw a video, a video of another woman, not [E.M.], a woman that [Defendant] had went on a date with in Texas, and in this video the woman is in the Toyota Avalon, the same Toyota Avalon that [Defendant] was driving the night he encountered [E.M.], the same Toyota Avalon that detectives found in the driveway of [Defendant]'s home on 17th Street, and in this video the woman is passed out on the passenger's side. Her eyes are closed. A straw is hanging out of her mouth, and in the video you will be able to see that [Defendant] is violently penetrating her vagina with his fingers.

> So, whenever detectives go to speak to this woman she says, I know [Defendant], I went on a date with [Defendant], but she had no idea about the video. She had no idea about what happened in that car. She had no memory of it, just like [E.M.] doesn't.

Defense counsel did not raise a contemporaneous objection to the State's comments, instead moving for a mistrial after the State concluded its opening on the

grounds that he could not cross-examine D.H. "It's my understanding the entire video was coming in and now we cannot cross-examine her based on the opening statement that she talk to - - what she said." The State argued it was only going to discuss "her reaction, her facial expressions, and all of that, not what [D.H.] said [to the officers]." Defendant argued that the opening statement noted what D.H. did and did not know and, since Defendant cannot cross-examine D.H., a mistrial is necessary. The trial court denied the motion for mistrial. Defendant now contests that denial, claiming that "[t]he failure to allow [d]efense counsel the opportunity to cross-examine D.H. substantially affected the fairness of the proceedings and the reliability of her testimony." In response, the State asserts that counsel misspoke during opening statements and that the prosecutor's statement is not evidence

Under La.Code Crim.P. art. 766, "[t]he opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." Louisiana Code of Criminal Procedure Article 770 sets forth the basis for a mandatory mistrial:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense; or
>
> (4) The refusal of the judge to direct a verdict.
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however,

requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

The defendant may also request an admonition be made to the jury in certain situations when a remark may create prejudice or request a mistrial according to La.Code Crim.P. art. 771:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Louisiana Code of Criminal Procedure Article 775 provides further grounds for mistrial:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with law; or
>
> (6) False statements of a juror on voir dire prevent a fair trial.

16

> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

> A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

A trial court is given "broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial." *State v. Leonard*, 05-1382, p. 11 (La. 6/16/06), 932 So.2d 660, 667. "[A] mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant." *Id.*

Although the prosecutor's opening statement seemingly indicated the evidence would include what D.H. said, the State alleges that this was a misstatement—the evidence instead included a detective's appreciation of D.H.'s reaction. The State further notes that a prosecutor's statement is not evidence and, "absent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible is not a ground for a mistrial." *State v. Green*, 343 So.2d 149, 151 (La.1977).

After review, we Defendant's claim has no merit. Defendant, in his brief to this court, fails to address the law regarding the granting of a mistrial and fails to state which basis he believes entitled him to a mistrial. Of the above mandatory reasons for mistrial, the only basis which might apply to the State's opening statement remarks is La.Code Crim.P. art. 770(2). However, evidence of another crime had already been ruled admissible and on review we found that admission was not an error. Defendant, instead, asserts that he was deprived of his constitutional right to confront his accuser, D.H. Specifically, Defendant alleges he was precluded from cross-examining D.H. regarding her testimony as to the events with Defendant that were on video, and which the State mentioned in its opening statement.

17

However, D.H. did not testify against Defendant. The evidence would show that detectives spoke to D.H. and informed her of the videos found on Defendant's phone. Detective Sanders was then instructed to testify regarding D.H.'s reaction. Prior to Detective Sanders responding, the State explicitly told its witness not to repeat anything D.H. said and simply asked about D.H.'s reaction to the videos. Additionally, there were no objections made during Detective Sanders's testimony regarding her interaction with D.H. While the Confrontation Clause grants Defendant the right to cross-examine the witnesses against him; D.H. was not a witness against him. Accordingly, his inability to cross-examine her is irrelevant, and his convictions are affirmed.

**<u>DECREE</u>:**

Defendant's convictions and sentences are affirmed. The trial court is ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**