JOHNSON, Justice.
| defendant, Michael Anthony Wright, was convicted by a jury of aggravated incest and sentenced to eighteen years im *310 prisonment at hard labor. Finding the trial court erred in admitting certain evidence which was inadmissible pursuant to Louisiana Code of Evidence article 412.2, and in denying the defendant’s related motions for mistrial, the court of appeal reversed the conviction, vacated the sentence and remanded the matter for a new trial. We granted the State’s writ application to review the correctness of the court of appeal’s decision. For the following reasons, we vacate the decision of the court of appeal, and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
Defendant was charged by bill of information with aggravated incest in violation of La. R.S. 14:78.1.[1] The offense was alleged to have occurred between 12February 15, 2007, and February 21, 2007, when the victim, “BK,”[2] who had just turned seventeen, and defendant, BK’s biological father, stayed at a hotel in Slidell, Louisiana, during Mardi Gras.
Defendant and BK’s mother were never married, and BK lived with his mother in Slidell, Louisiana, until he was thirteen years old. Defendant only saw BK a couple of times during these years. Around 2003, when BK was thirteen years old, he became increasingly difficult at home, and continuously expressed a desire to know his father. BK’s mother contacted defendant, who agreed to let BK live with him in Lake Charles, Louisiana. BK lived with defendant on a discontinuous basis from the time he was thirteen until shortly after the alleged incident.
In 2005, defendant became sexually involved with “BC,” a seventh-grade classmate of BK. Defendant married BC in August of 2005, when she was fourteen years old and six months pregnant with his child. BC lived with defendant and BK. BK testified he was very fearful of his father, and witnessed defendant physically abuse BC:
Q [District Attorney]: Describe to the jury some of the things you saw him do with [BC].
A[BK]: Punching her, kicking her. Just beating her, and not just a hit and stop, I mean, beating her until she just was crying for him to stop. Bleeding, picking her up, throwing her, slamming her, duct-taping her, throwing her in a closet for three hours, beating her while she’s duct-taped. I’ve seen him, while she was sleeping, stick a bottle of hot Tabasco inside of her. It goes on and on.
*311 | oFurther, defendant’s trial testimony revealed he had been convicted of domestic battery of his first wife in 1995 or 1996.
According to BK, he and defendant went to Mardi Gras in 2007, and they “stayed loaded the whole time on crack, weed— pain pills, drinking.” BK further testified “[t]he first night we stayed there, he had me do oral sex on him, and then we stayed another night and we did anal sex twice.” BK testified the intercourse was painful but he did not fight because he was scared of defendant and feared physical violence. BK did not inform anyone of the incident, and returned to Lake Charles with the defendant.
BK returned home to Slidell, Louisiana, in April or May of 2007, at which time he told his mother and grandmother about the incident. He eventually went to the police in July of 2007, after his mother convinced him to report it.[3] He testified it took his mother a few months to convince him to go to the police, but he finally agreed because he “felt it was right, the right thing to do” and because he had brothers and sisters and he “didn’t want it to continue.” In addition to being fearful of his father, BK testified that he did not report the abuse immediately because he “did not want to go through this. I don’t want to be here now. I didn’t want to do it then. I just wanted to move on.”
Before trial, the State filed an “Other Crimes Notice” pursuant to La. C.E. art. |4412.2, stating it intended to offer other crimes evidence to demonstrate defendant’s lustful disposition to sexually assault young children. The notice included the facts that defendant “has committed other sexual assault crimes against young children; including sexual acts with a fourteen year old female BC, DOB: October 9, 1990;” and that “on August 5, 2005, to avoid criminal prosecution by the State of Louisiana defendant traveled from Lake Charles, Louisiana to Vidor, Texas to marry BC who was six months pregnant and fourteen years old.” Defendant filed an objection to the evidence. After a hearing, the trial court found evidence of BC’s age to be inadmissible. Specifically, the trial court stated:
The Court feels that, that those, the facts of those incidents, that is the involvement with the female as compared to the acts involving the 17-year-old son are of a disparate nature. And when balancing the probative value against the prejudicial effect, I do not find that the probative value significantly outweighs — I’m sorry, that I find that the probative value is significantly outweighed by the prejudicial effect, and I’m going to disallow the, the evidence with regards to the age of the female at the time they began their sexual involvement and actually had a child together.
At trial, the defendant generally asserted that BK’s story was completely fabricated. The defense argued: “This is a *312 totally made-up story for whatever reason that this poor, disturbed, young person had put in his mind, that this is some way that I can get back at my dad for whatever reason.” Defendant portrayed BK as a difficult and disturbed youth with behavioral problems, who had difficulties in school and with his parents. Defendant testified he took BK into his home to try to help.
Relative to the court’s in limine ruling regarding BC’s age, three instances arose during trial wherein defendant argued the State ignored the court’s ruling, and introduced prohibited evidence to the jury.
First, during opening statements, the prosecutor informed the jury of BC’s age. Specifically, in describing how BK would testify, the prosecutor stated:
IsHe will tell you subsequent to that, he introduced him — [BK] introduced the defendant to [BC], that [BC] came to live with them. Subsequent to that, [BC] and Michael Wright got married. The defendant’s mother took them to Vidor, Texas, to get married. [BC] was 14 years old.
Defendant objected and moved for a mistrial. After hearing arguments, the court denied the motion for mistrial, reasoning: “[T]he fact of the matter is that, that there has been no evidence or suggestion made that — that that was a criminal act or other wrong. I simply don’t think that at this stage that it warrants a mistrial.” The court continued by admonishing the prosecutor not to “step over the line again” and reiterating its earlier ruling that “the age of this — of his wife is not relevant to the charge in this case.”
Later, during the direct examination of BK’s mother, the State inquired as to how she learned of the incident and her reaction:
Q [District Attorney]: What did he [BK] tell you?
A [BK’s mother]: He came over, him and my mom came to my house. [BK] sat on the couch and told me that — he said, “My dad had sex with me.”
Q: Did you ask him any additional questions about that?
A: All I told him was that we needed to call the police.
Q: What was his response?
A: He didn’t want to call the police because he said his father gets away with everything. And he said that when he reported his father having sex with [BC]—
At this point, defendant objected and moved for a mistrial. The trial court overruled the objection and denied the motion for mistrial stating: “I’m going to overrule the objection on that standpoint because all he [sic] said was — I mean, the testimony is already that he was married to [BC], so I don’t find anything at this point that is unduly prejudicial about that. Clearly not grounds for a mistrial,.... ” The court further elaborated:
|fiBut let me tell you where we are because you need to know where we are. Number one, the fact is he was married to [BC], and that’s coming in. That’s part of the overall picture in this thing.
The second thing is you — all raised it in the opening question, why would he say what he said, why would he make a quote, false report, about what happened? And we may be getting to why he would say that.
You — all have asked questions rhetorically and the trial may very well end up saying — now, whether that helps or it hurts you, that’s not for me to decide. That’s for the jury to decide. But that’s where this thing is headed.
*313 And so, at this point, you know, I’m overruling the objection, overruling the motion for the mistrial, denying the motion for the mistrial. I still think that at least at this point we are not to a point where this witness — I’m not going to allow this witness to refer to anything as far as other offense reporting and other offense in this case.
But I’m telling you guys, this thing— and you have framed it in your opening statement — this thing is set up to say why he said what he did, why he reported it. He either reported it because it happened or he reported it for a multitude of other reasons. And if that’s one of the reasons, then it may end up one of reasons that they — but at this point in time, we’re not there yet.
Lastly, an issue arose during defendant’s testimony. Defendant testified on his own behalf. During that testimony, defendant denied ever having any homosexual experiences, and testified that he had been married twice, both times to women. Believing defendant had opened the door to BC’s age, on cross examination the State asked defendant how old BC was when he married her and defendant responded that she was fourteen years old. Defense counsel objected. The court overruled the objection, and allowed the question, giving extensive reasons for changing his initial ruling:
Of course, I anticipated we were headed here whenever he decided to testify. Couple of things I have had heard in listening to his testimony ... I know that earlier there were some inferences that were made about his disruptive behavior in Lake Charles. It was related to fact that [sic]. That his father was involved with apparently one of his friends [BC] who he was in school with, who he testified he was in school with. That testimony came in on direct examination by — I’m sorry, it was either on direct or redirect examination of [BK] that they were in school together.
17The thing that he also testified to on his direct examination here was that both of his marriages were to women, which obviously would include the female sex, but I think it raises the question as to whether a 14-year-old would be considered a woman at that point or not.
The fact of the matter is that this issue has been nibbled around the whole time, primarily because of the credibility issues that this case has drawn: Credibility issues of the victim, credibility issues of the defendant, both of which are absolutely critical in this case.
At this point, there’s been no physical evidence. In fact, the State has, has rested. And there was no physical evidence introduced in connection with this case, so the case totally comes down to whether or not they believe and find the victim credible or whether they believe and find the defendant credible, which could be turned on a multitude of different facts and factors.
Given the fact that his disruptive nature, that is the victim’s disruptive nature, has been front and center of this whole case, the Court feels like in order to complete the picture, that all the different elements of why his nature [sic] and why he may have been disruptive should be explored.
I think that given the testimony of the defendant at this point, as well as the credibility issues that have been put at issue in this case, that he should be allowed to be questioned on that issue as well, because it goes to the explanation of why he may or may not have been disruptive in the times that he left Lake Charles.
*314 Again, I think that without it, we’ve gone into every conceivable thing that may have caused him to, quote, according to the defense, falsely accuse his father of this. To me, that’s one of the elements that is part of the overall equation of determining the credibility of this case.
So, I am going to, based on the testimony that’s come in, the defense in this case as well as the credibility issues at stake, I’m going to allow him to question the witness as to, I mean, the question on the table was the age of [BC]. It is also obvious at that time that that relationship began while [BK] was living with him.
And so for all those reasons, I think that it goes to credibility in the case and I’m going to allow him to question the witness on that.
After the court changed its ruling on the evidence, the State fully questioned defendant eliciting testimony as to BC’s age, how many months pregnant BC was when defendant married her, and the fact that defendant was still married to another woman when he impregnated BC.
| ^Following the trial, the jury found defendant guilty of aggravated incest, and he was subsequently sentenced to eighteen years imprisonment at hard labor. Defendant appealed, arguing the trial court erred in allowing the State to ignore the in limine ruling that evidence regarding BC’s age was inadmissable, and in denying his related motions for mistrial.
The court of appeal reversed the conviction and sentence, and remanded for a new trial.[4] The court agreed with the trial court’s initial finding and ruling that the evidence of “defendant’s sexually as-saultive behavior with a female child whom he ultimately married and bore a child with is not similar to the charged misconduct in this case, homosexual, incestuous sexual intercourse with his seventeen-year-old biological son or admissible under Article 412.2.” Wright, 10-0858 at p. 4, 2010 WL 5464421 at *4. The court went on to reason that the “evidence was impermissibly introduced to attack the character of the accused. Any probative value this evidence may have is far outweighed by the danger this evidence would unfairly prejudice defendant in the eyes of the jury, leading it to render a guilty verdict because of the prior acts rather than on the strength of the evidence of the offense for which he was charged. Thus, the evidence is barred by the balancing test of Article 403.” Id. Applying a harmless error analysis, the court found it could not “conclude that the guilty verdict actually rendered in this trial was surely unattributable to the erroneously introduced evidence.” Id. at p. 5, 2010 WL 5464421 at *5.
The state filed a writ application with this Court, which we granted.[5]
DISCUSSION
The issue before this Court is whether the court of appeal erred in reversing the ^defendant’s conviction and sentence based on its finding that the trial court erred in its eventual admission of the State’s evidence regarding BC’s age, and in its refusal to grant a corresponding mistrial.
La. C.E. art. 412.2(A) provides:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under *315 the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
The underlying basis of the court of appeal’s rationale for finding evidence of BC’s age to be inadmissible pursuant to La. C.E. art. 412.2 was the dissimilarities in acts due to the gender difference between BC and BK. Specifically, the court of appeal found that evidence of the defendant’s sexually assaultive behavior with BC was not similar to the charged incest with BK, defendant’s seventeen-year-old son.
Parties’ Contentions
The State argues the court of appeal erred in reversing the ruling of the trial court on the admissibility of evidence that defendant married a fourteen-year-old girl. The State does not argue this was a crime, but rather argues such evidence was relevant and admissible to explain the actions of BK, to complete the story of what happened and the context in which it happened, and to show the defendant’s lustful disposition toward children.
The State argues the court of appeal erroneously focused on its perceived dissimilarities between defendant’s sexual conduct with BC and the conduct at issue in this case. It argues the court of appeal ignored the fact that in both instances, defendant was engaging in sexual intercourse with a child, which is admissible to show his lustful disposition toward children. La. C.E. art. 412.2 does not limit the 1 inadmissibility of prior acts only to those identical or similar in nature. Moreover, the trial court provided a limiting instruction to the jury regarding any evidence of other crimes, thereby instructing the jury as to the proper treatment of such evidence.
Further, the State asserts that as the evidence unfolded at trial, and based on defense strategy at trial, this evidence was necessary. The defense attempted to prove BK’s story was fabricated, and made an issue of the delayed reporting of the offense. Thus, BK’s credibility, including the reasons why he did not protest during the acts at issue, and why he failed to report the crime sooner, was put at issue by the defense. The State argues the objected-to testimony by BK’s mother goes to that issue.
By contrast, defendant asserts the court of appeal’s decision was correct. Defendant argues there was a pattern of calculated prosecutorial misconduct, a failure of the trial court to control the proceedings, and an abuse of discretion by the trial court in denying the motions for mistrial. Defendant argues the trial court was correct when it initially excluded evidence of the sexual relationship between defendant and BC under La. C.E. art. 412.2, and the court abused its discretion in permitting this evidence because of credibility issues between the alleged victim and the defendant, as well as to “complete the picture” of BK’s disruptive behavior in Lake Charles. Further, defendant argues that the homosexual crimes against nature allegedly forced upon BK are markedly dissimilar from the consensual heterosexual relationship defendant had with BC, whom later became his wife.
Additionally, defendant reads Article 412.2 as only applying when the victim is under the age of seventeen. Thus, because BK was seventeen at the time the alleged crime occurred, he was not a child for the purpose of La. C.E. art. 412.2.
*316 Analysis
A trial court’s ruling on the admissibility of evidence is reviewed for an abuse Inof discretion. State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675, 684. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228; State v. Humphries, 40,810 (La.App. 2 Cir. 4/12/06), 927 So.2d 650, 656, writ denied, 06-1472 (La.12/15/06), 944 So.2d 1284. After review of the record and law, we find no error in the trial court’s admission of evidence of BC’s age because we find it is admissible pursuant to La. C.E. art. 412.2. Thus, we hold the court of appeal erred in vacating the conviction and sentence.
First, we reject defendant’s argument that Article 412.2 only applies when the victim is under the age of seventeen. The statute specifically applies in two situations: 1) when an accused is charged with a crime involving sexually assaul-tive behavior, or 2) when an accused is charged with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense. Here, defendant is charged with aggravated incest, a crime involving sexually assaultive behavior. Thus, evidence of defendant’s other acts which involve sexually assaultive behavior or acts which indicate his lustful disposition towards children may be admissible.
In looking at admissibility of Article 412.2 evidence where victims are of different genders, existing Louisiana jurisprudence involves victims of the same general age and same gender.[6] Similarly, there is a dearth of federal jurisprudence | ^regarding the issue of different genders of victims when analyzing the similar Federal Rule of Evidence 413.[7] However, after considering this issue, especially in light of the purpose behind Article 412.2, we find no reason to prohibit the admission of such evidence simply because the other acts involve a victim of a different gender. While this Court has not previously addressed the issue directly, we have implied that such evidence would not be inadmissible strictly on the basis of a difference in *317 the victims’ gender. In State v. Crochet, 05-0123 (La.6/23/06), 931 So.2d 1083, this Court considered whether the court of appeal erred in reversing defendant’s eonvic: tions on the grounds that the trial court allowed a joint trial of three charges involving sexual abuse by defendant towards his children (both male and female) and evidence of his similar misconduct regarding two of his stepchildren. In finding the defendant was not prejudiced by the consolidation, this Court noted:
Moreover, consolidation of the cases did not expose the jury to evidence that was admissible as to one or more of the counts but inadmissible as to other counts. Evidence of defendant’s sexual abuse of his biological and stepchildren was, as the trial court determined, admissible to show his “lustful disposition toward children.” La. C.E. art. 412.2.
Crochet, 931 So.2d at 1087.
Further, in enacting Article 412.2, the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility. We have previously examined the legislative history behind the Article in State v. Williams, 02-1030 (La.10/15/02), 830 So.2d 984. In Williams, this Court 11snoted the enactment of the Article was prompted primarily by two decisions of this Court, State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, and State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. Both cases involved prosecutions for aggravated rape in which the State sought to introduce evidence of other sexual offenses committed by the defendants pursuant to what the State labeled a “lustful disposition” exception to other crimes evidence. In both cases, this Court refused to recognize the so-called “lustful disposition” exception to Article 404’s other crimes prohibition,[8] but, in doing so, noted that the evidence sought to be introduced would be admissible if Louisiana had a rule similar to Federal Rule of Evidence 413. This Court stated “the enactment of Article 412.2 was apparently the legislature’s response to this Court’s statements in McArthur and Kennedy as the language of Article 412.2 closely follows that of Federal Rule of Evidence 413.” Williams, 830 So.2d at 986. Thus, Article 412.2 was enacted to loosen restrictions on “other crimes” evidence, and to allow evidence of “lustful disposition” in cases involving sexual offenses.
Based on the facts of this case, we find the trial court properly allowed evidence of BC’s age to be admitted. The trial court is afforded great gatekeeping discretion in determining what evidence is deemed admissible. Here, the trial court evidently determined, after testimony was developed at trial and reconsidering its previous ruling, defendant’s ephebophilic proclivities were substantially similar enough to be both relevant and not unduly prejudicial. We agree.
Disregarding the difference in gender, we find the similarities between BK and BC were sufficiently probative to support the admission of evidence of BC’s age | Uunder Article 412.2. The record evidence demonstrates defendant had a propensity for sexual activity with adolescents where he held a position of authority, and *318 where the adolescent children were in his household. Defendant met BC because she was a seventh-grade classmate of BK. Before marrying the defendant, BC lived with her mother down the street from the defendant’s residence, but spent time at defendant’s home. Both victims were small-statured and in them mid to late teens — BK was only eight days past his seventeenth birthday at the time of the alleged incest; BC was two months shy of her fifteenth birthday, and already six months pregnant, when she married the defendant. Both were living with defendant in a domestic setting with him as the head of household when they were subjected to abuse.[9] The evidence further demonstrates that defendant had sexual inclinations toward adolescents that manifested in the physical and sexual threatening and abuse of those under his domestic dominion. BK lived in the household with defendant and BC, and observed defendant’s severe physical abuse of BC. BK testified he suffered defendant’s incestuous actions under his perceived fear of physical abuse due to his father’s violent nature. Having witnessed defendant’s brutal treatment of BC, it was reasonable for BK to conclude that he would suffer a similar fate if he resisted defendant’s sexual assault. In sum, the record demonstrates that evidence regarding BC’s age was relevant to show defendant had a lustful disposition towards adolescents living with him in a domestic situation, where his advances could be carried out at will with threats of, or actual, physical violence to ensure compliance.
We also do not find the evidence to be so prejudicial as to warrant exclusion under La. C.E. art. 403. La. C.E. 403 provides: “Although relevant, evidence may be | ^excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” Regarding the proper balancing between the probative value of evidence and its prejudicial effect required by Article 403, this Court has explained:
Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term “unfair prejudice,” as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.
State v. Rose, 06-0402 (La.2/22/07), 949 So.2d 1236, 1244 (internal citations removed).
The court of appeal concluded that any probative value of this evidence was far outweighed by the danger this evidence would unfairly prejudice defendant in the eyes of the jury leading it to render a guilty verdict because of the prior acts, rather than on the strength of the evidence of the offense for which he was charged. The court found the evidence was imper-missibly introduced to attack the defendant’s character. We disagree. Considering the purpose behind Article 412.2, we find the evidence was properly admitted by the trial court. We do not find the admission of this evidence alone could “lure” the jury into finding defendant guilty of the charged incest with his son. Moreover, any possible prejudice resulting *319 from the introduction of evidence of BC’s age certainly pales in comparison with evidence regarding defendant’s extremely violent treatment of BC. Given the evidence of defendant’s violent nature, his violence towards BC, and evidence of his prior conviction for domestic battery of his first wife, we do not find evidence of BC’s age to be overly prejudicial.
11fiCONCLUSION
For the above reasons, we find the court of appeal erred in vacating defendant’s conviction and sentence. We find no abuse of discretion in the trial court’s decision to allow evidence of BC’s age to be submitted to the jury. Such evidence is admissible pursuant to La. C.E. art. 412.2. Because the court of appeal found the admission of other crimes evidence constituted reversible error, it did not address defendant’s remaining assignment of error.[10] Accordingly, we vacate the appellate court’s decision, which reversed the defendant’s conviction, and we remand the case to the court of appeal for consideration of the defendant’s remaining assignment of error.
DECREE
DECISION VACATED AND CASE REMANDED TO THE COURT OF APPEAL.

. La. R.S. 14:78.1 provides, in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battety, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
C.Consent is not a defense under this Section.

. The victim is referenced herein only by his initials. See La. R.S. 46:1844(W).

. BK provided the following statement to the police department: "During Mardi Gras of 2007, my father and I stayed at the La Quinta Motel in Slidell. The first night of our stay there, my father put my head below his waist and had me go down on him. The second night of our stay at the motel, my father had sex with me, twice. Although it was something I didn't want to do, he didn’t force me, he didn’t have to because I was scared of what would happen if I said no. My father is a very violent person. He was on a lot of drugs when this happened. When he gets messed up on drugs he beats his wife. I’ve witnessed him duct tape his wife's whole body and kick her and punch her until she couldn’t breath. He left her in the closet for 2 and a half hours. He then asked me if I would help him bury her if he killed her. I said no and he let her out the closet and unduct [sic] taped her. He has been arrested several times for domestic violence. I lived with him from January 07-April 07. I moved in with my aunt in Slidell in April 07.”

. State v. Wright, 10-0858 (La.App. 1 Cir. 12/22/10) 2010 WL 5464421 (unpub’d).

. State v. Wright, 11-0141 (La.6/17/11), 63 So.3d 1042.

. See, e.g. State v. Cotton, 42,509 (La.App. 2 Cir. 9/19/07), 965 So.2d 1016, 1019-20, writ denied, 07-2070 (La.3/7/08), 977 So.2d 898 (probative value of "lustful disposition” evidence, involving defendant's past sexual abuse of victim's mother when she was between six and nine-years-old and defendant's six-year-old niece, was properly admitted): State v. Verret, 06-1337 (La.App. 1 Cir. 3/23/07), 960 So.2d 208, 221, writ denied, 07-0830 (La.11/16/07), 967 So.2d 520 (evidence concerning sexual abuse incident involving defendant's 10-year-old female cousin was relevant in aggravated rape prosecution; incident involved evidence of defendant’s lustful disposition toward young child, victim of charged offense was eight-year-old female, and charged offense occurred shortly before incident involving cousin); State v. Williams, 41,731 (La.App. 2 Cir. 1/24/07), 950 So.2d 126, 131-32, writ denied, 07-0465 (La.11/2/07), 966 So.2d 599 (other crimes evidence that defendant raped six-year-old daughter of a girlfriend was admissible at trial for aggravated rape of 11-year-old girl; other-crimes evidence was clear and convincing and was relevant and probative of occurrence of incident and of defendant’s disposition toward children, and differences between charged offense and other crime, such as victims’ ages, were comparatively minor); State v. Wallace, 41,720 (La.App. 2 Cir. 1/24/07), 949 So.2d 556, 560 (similar prior conduct with a female child of similar age highly probative of the requisite intent for the crime).

. F.R.E. art. 413(a) provides: “In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant’s commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.”

. La. C.E. art. 404 provides, in pertinent part: “Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident ... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art 404(B)(1)."

. See State v. Humphries, supra (other crimes evidence permitted where it showed "a common mode of action and demonstrated a propensity for sexual acts with a young child where defendant held a position of authority.”)

. Defendant assigned as error the trial court’s refusal to grant a mistrial after the prosecutor compared the defendant to Adolph Hitler in closing argument.