MOORE, J.
Following a jury trial, the defendant, Benjamin Michael Floyd, was convicted as charged of indecent behavior with a juvenile. The court imposed a sentence of 20 years hard labor without benefit of probation, parole or suspension of sentence. On the same day, the state filed a multiple offender bill, which was still pending when the defendant filed the instant appeal of his conviction.[1] For the following reasons, we affirm the defendant's conviction for indecent behavior with a juvenile.
FACTS
The defendant pulled a float in a 2013 Mardi Gras parade held in Shreveport. While he and other float drivers were queued up to move their floats into a storage *1168 garage, Floyd went to the back of his truck to sit beside his 12-year-old niece, C.H. The girl testified that Floyd told her that she was his "new favorite toy," and he began groping her breasts, touching her legs and buttocks. Two witnesses, float driver Thelbert James Elmore, Jr., and his 16-year-old daughter, Casey Elmore, testified that they walked over to Floyd's truck to speak with him and saw him rubbing C.H.'s legs in an inappropriate manner. C.H. reported her uncle's advances to her mother, who in turn reported the incident to authorities.
The defendant was charged by amended bill of information with indecent behavior with a juvenile, La. R.S. 14:81. After a jury trial, he was convicted as charged by a unanimous jury.
Defense counsel assigned one error by the trial court in this appeal, while the defendant filed a separate brief alleging six pro se assignments of error.
DISCUSSION
Defendant's counseled assignment of error alleges that the trial court erred by admitting evidence of two previous alleged acts of sexual misconduct pursuant to La. C.E. art.412.2, particularly where one of the alleged acts involved conduct that was more serious than the offense for which Floyd was being tried. Both of the alleged prior acts involved the same victim, C.H., which she disclosed during a Gingerbread House interview. The more serious conduct described by C.H. occurred several years earlier while Floyd was temporarily living at the house with C.H. and her mother after he was released from prison in March of 2008.[2] C.H. said that she was asleep in bed when she was awakened by a tickling sensation on her vagina and discovered Floyd was licking her vagina. She said her pants and underwear had been removed and she felt his penis between her legs. She also said that in early 2011 when she and her mother lived in Benton, Arkansas, Floyd told her she "had big breasts" and attempted to view her breasts by blowing under her shirt.
The defendant argues that because the evidence that he performed oral sex on the victim when she was around 5 years old was more serious than the instant offense for which he was charged, it was inadmissible under State v. Jackson, 625 So.2d 146 (La. 1993). In Jackson, the defendant was charged with molesting his granddaughters. The state sought to put on evidence of certain prior illicit sexual acts performed by the defendant with his daughters. The Louisiana Supreme Court held that the defendant's alleged prior acts of kissing his daughters and fondling their breasts were admissible, but his alleged prior acts of raping one daughter, showing his penis to another, and fondling their vaginas were inadmissible under La. C.E. art. 404(B)"because the prejudicial value of the testimony outweighs its probative force, considering that the defendant is charged only with kissing his granddaughters and fondling their breasts in the present case." Id. at 152. The court noted that the prior acts were "dissimilar and more serious than the current criminal charges," and stated that recitation of those prior acts would serve only to inflame the jury. Id. Hence, their admission would have violated La. C.E. art. 403, as their prejudicial effect would outweigh their probative value.
The state argues that Jackson is distinguishable from the instant case because the evidence of prior acts sought to be admitted did not involve conduct against *1169 the same victim in the crime charged, and furthermore, Jackson was decided prior to the enactment of La. C.E. art. 412.2, which requires a less stringent similarity requirement than La. C.E. art. 404(B), which is the general provision governing "other crimes, wrongs or acts" evidence.
Prior to trial, the state filed notice of its intention to use three prior sexually assaultive acts by the defendant at trial: (1) his prior performance of oral sex on C.H. and placement of his penis between her legs around March of 2008; (2) his statement to C.H. that she had "big breasts" and his attempt to view her breasts by blowing up her shirt around January of 2011; and (3) his remark to K.E., another juvenile, asking her if she had any naked photographs of herself on Facebook, which occurred in late 2012 or early 2013.
A hearing was held to determine the admissibility of the prior sexually assaultive acts pursuant to La. C. Cr. P. art. 412.2. Caddo Parish Sheriff Sgt. James Moore testified that he observed C.H.'s forensic interview at the Gingerbread House in Shreveport, Louisiana. He said C.H. told the forensic interviewer that sometime in January of 2011, when Floyd was helping her and her mother move to Benton, Arkansas, he and C.H. were left alone together when C.H.'s mother left to get pizza. Floyd lay down on a bed next to C.H., made comments about her breasts and then tried blowing up her shirt to see them.
On another occasion, when C.H. was approximately five years old, she recalled sharing a bed with Floyd and waking up feeling something tickling her vagina. She also said she felt his penis between her legs. When she woke up the next morning, her pajama pants were on the floor. Sgt. Moore confirmed that Floyd admitted in a post-Miranda statement to sleeping next to C.H. one or two nights. This incident occurred in March of 2008.
Sgt. Moore also testified that he spoke with another minor, K.E., who stated that Floyd had once asked her if she had any naked photographs of herself on Facebook.
The trial court also viewed the video recording of C.H.'s Gingerbread House interview which confirmed the testimony of Sgt. Moore. Following the hearing, the court ruled that the prior sexual acts involving C.H. were admissible at trial to show the defendant's lustful attitude toward her, but that the prior act involving K.E. could not be used at his trial because it was too far removed from the inappropriate conduct with C.H. The court appeared to place significant emphasis on the fact that the prior conduct involved the same victim.[3]
The general rule regarding other crimes or acts is provided by La. C.E. art. 404, which provides in part:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *1170 identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 412.2(A) provides a narrow exception to Art. 404(B) in cases involving sexual offenses against children allowing the admission of certain relevant evidence of a defendant's lustful disposition toward children. The statute provides:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
However, admission of the evidence still turns on the balancing test provided by Art. 403, which reads:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Our review of a trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion; the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis on appeal. State v. Davis , 44,656 (La. App. 2 Cir. 11/18/09), 26 So.3d 802, writ denied , 09-2768 (La. 6/25/10), 38 So.3d 355.
In State v. Wallace , 41,720 (La. App. 2 Cir. 1/24/07), 949 So.2d 556, a panel from this court upheld a trial court's ruling that prior sexual crimes evidence of a more serious nature than the charges faced by Wallace in the underlying case was admissible to show his lustful disposition toward children. Wallace was charged with indecent behavior with a juvenile because he removed his grandniece's panties, patted her bottom, and stuck his finger in her vagina. The state sought to introduce evidence that Wallace had done the same thing to his niece when she was the same age (10-11), and also took Polaroid pictures of him performing oral sex on his niece while she was nude. The panel explained:
Wallace's very similar prior conduct with a female child of a similar age was highly probative of the requisite intent for the crime. Also, in this case, the probative value of the evidence strongly outweighs the prejudicial effect because Wallace offered an alibi defense to the crime that tended to cast doubt on H.Y.'s entire story.
Id. at 560.
In State v. Wright , 11-0141 (La. 12/6/11), 79 So.3d 309, the Louisiana Supreme Court explained that the Legislature's enactment of La. C.E. art. 412.2 was in response to two of its previous opinions refusing to allow evidence to show a defendant's "lustful disposition" under La. C.E. art. 404(B). It found that the new statute did not "impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility," and concluded that Art. 412.2 was enacted to loosen restrictions on "other crimes" evidence, and to allow evidence of "lustful disposition" in cases involving sexual offenses. Id. at 317.
*1171 In this instance the trial court concluded that the evidence of Floyd's prior sexually assaultive acts on C.H., i.e., performing oral sex on her, commenting on her breasts and trying to manipulate her shirt to see her breasts were probative of his lustful disposition toward C.H. and constituted admissible evidence allowed under La. C.E. art. 412.2.
While the act of performing oral sex upon C.H. and touching her with his penis were somewhat dissimilar acts from the instant act, and also could have subjected him to a more serious prosecution for aggravated rape or molestation of a juvenile, Art. 412.2 was enacted after State v. Jackson , supra , and, as noted above, no longer requires such evidence to meet a stringent similarity requirement for admissibility. See State v. Wright, supra. Jackson is distinguishable because the sexual conduct was far more egregious than the acts by the defendant in this case, and involved the defendant's own three daughters, including the rape of one. Hence, while the probative value of the evidence in Jackson was outweighed by its extremely prejudicial nature, we do not find that to be the case in this instance. Additionally, unlike Jackson , the prior sexually assaultive behavior involved the same victim, C.H., and therefore its probative value is more substantial.
Accordingly, we conclude the trial court did not abuse its discretion by determining that the prior sexually assaultive act was admissible under La. C.E. arts. 403 and 412.2.
This assignment of error lacks merit.
Pro Se Assignments of Error
In his first pro se assignment, Floyd attacks the credibility of two of the state's witnesses, Thelbert James Elmore, Jr., and Casey Elmore, claiming that their trial testimony was conflicting and thus unreliable.
At trial, Thelbert testified that he pulled the float in front of Floyd's truck. When he walked back to talk to him, Floyd was sitting next to C.H. touching her legs in a way that Thelbert thought "just didn't look right." He recalled speaking with Floyd, but could not recall what was said.
Casey Elmore, Thelbert's daughter, corroborated her father's testimony. She stated that she saw Floyd rubbing C.H.'s inner thigh at the Mardi Gras parade. She explained that she stood beside her father during his encounter with Floyd, which lasted approximately 15 minutes.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed. 2d 62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Demery , 49,732 (La. App. 2 Cir. 5/20/15), 165 So.3d 1175, writ denied , 15-1072 (La. 10/17/16), 207 So.3d 1067.
On review, we find no merit to Floyd's claim in this assignment. Contrary to his claims, the testimony of Thelbert Elmore and his daughter, Casey Elmore, is both consistent and corroborative. Both testified that Floyd's truck was parked behind Thelbert's truck and that they saw Floyd touching C.H.'s leg in a sexual way. The jury was free to accept or reject the testimony of Thelbert and Casey, and this court will not impinge on the jury's discretion by assessing the credibility of their testimony.
*1172 This assignment of error lacks merit.
By his second pro se assignment of error, Floyd alleges that his rights were violated when the state refused to dismiss the charges against him despite the victim's mother's request to drop the charges.
At trial, C.S. (the victim's mother) testified that about a month after she reported Floyd's inappropriate touching of C.H. at the Mardi Gras parade, she filed a request to drop any charges against him. A document entitled "Request to Drop Charges" was admitted into evidence, which contained C.S.'s signature. C.S. stated that no one asked her to drop the charges, she chose to file the request without C.H.'s knowledge.
The district attorney has charge and control of every criminal prosecution instituted or pending in district court, and determines whom, when, and how he shall prosecute, subject only to the supervision of the attorney general. La. C. Cr. P. art. 61. Hence, the district attorney was under no obligation to dismiss the charge against the defendant based upon the request by C.S.
This assignment of error is without merit.
By his third assignment of error, Floyd complains that his right to remain silent was violated when his video-recorded interview with police was played at trial.
At trial, Sgt. Moore testified that he called Floyd on May 21, 2013, after observing C.H.'s Gingerbread House interview. Floyd came to the police station to be interviewed, Sgt. Moore read him his Miranda rights, and he waived them. Sgt. Moore testified that Floyd did not appear to be under the influence of any intoxicating substances. A video recording of his interview was played in open court, showing that he was advised of, and waived, his Miranda rights. Floyd then repeatedly denied wrongdoing, but ultimately admitted that he may have inadvertently touched C.H.'s breasts and buttocks while wrestling with her at the Mardi Gras parade; he denied performing oral sex on C.H. or blowing down her shirt. Sgt. Moore asked if he would submit to a lie detector test, and Floyd agreed; however, at trial, Sgt. Moore testified that he never intended on having Floyd take a lie detector test because they are not admissible in a court of law.
Before the state may introduce a confession into evidence, it must demonstrate that the statement was free and voluntary, and not the product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451 ; La. C. Cr. P. art. 703(D) ; State v. Blank , 04-0204 (La. 4/11/07), 955 So.2d 90, cert. denied , 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed. 2d 346 (2007) ; State v. Simmons, 443 So.2d 512 (La. 1983). If a statement is a product of custodial interrogation, the state also must show that the person was advised before questioning of his right to remain silent; that any statement he makes may be used against him; and that he has a right to counsel, either retained or appointed. Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).
In this instance, the video of Floyd's statement shows that he was advised of his Miranda rights, and he waived those rights prior to giving his statement. Moreover, the video demonstrates that his statement was not the product of fear, duress, intimidation, menace, threats, inducements or promises. Floyd understood the questions asked of him and appeared to be oriented as to time and place. Additionally, he demonstrated the mental aptitude to make small, seemingly benign admissions while adamantly denying more serious allegations. Any misstatements of fact by Sgt. Moore regarding his intention *1173 to subject Floyd to a lie detector test were insufficient to render his free and voluntary statement inadmissible. See State v. Lockhart , 629 So.2d 1195 (La. App. 1 Cir. 1993), writ denied , 94-0050 (La. 4/7/94), 635 So.2d 1132 ; State v. Sanford , 569 So.2d 147 (La. App. 1 Cir. 1990), writ denied , 623 So.2d 1299 (La. 1993).
This assignment of error lacks merit.
In his fourth pro se assignment of error, Floyd argues that the trial court erred in allowing the video recording of C.H.'s Gingerbread House interview to be played at trial. Specifically, he argues that the state failed to prove it had complied with La. R.S. 15:440.4 and La. R.S. 15:440.5 by failing to prove:
(1) C.H.'s statement was voluntary;
(2) there were no family members in the room where C.H. was interviewed;
(3) the recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement; and
(4) C.H.'s statement was not made in response to questioning calculated to lead her to make a particular statement.
Prior to its admission at trial, C.H. identified the video recording of her interview at Gingerbread House and testified that she was alone with the forensic interviewer when the interview took place. She also confirmed that what she stated during the interview was the truth. The video recording was then played for the jury and admitted into evidence without objection.
Jennifer Flippo, the forensic interviewer in the case, testified regarding the procedures followed when interviewing sexual assault victims. Flippo explained that she is alone in the interview room with the victim, but that a law enforcement officer watches the interview from another room via closed circuit television. The officer may instruct Flippo to ask the victim a question, but Flippo asks any questions in a child-friendly manner that is not intended to elicit a particular response.
La. R.S. 15:440.4 provides, in pertinent part:
A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That such electronic recording was voluntarily made by the protected person.
(2) That no relative of the protected person was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement[.]
La. R.S. 15:440.5 provides, in relevant part:
A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if: * * *
(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement[.]
In this instance, C.H. identified the video recording of her Gingerbread House interview, stated that she was alone with Flippo during the interview, and testified that she told the truth during her interview. Flippo corroborated that she was alone with C.H. during the interview and that non-leading questions were asked of C.H. (which the video recording confirms). Additionally, the video recording of the Gingerbread House interview was admitted into evidence without objection; as such, the defendant is precluded from complaining of its admission on appeal. La. C. Cr. P. art. 841.
*1174 Accordingly, there is no merit to this assignment.
In his remaining two pro se assignments of error, Floyd complains that the defense should have been permitted to question C.H. about recanting her allegations against him two days before trial and charges that C.H. should have been allowed to have her attorney present when testifying. Floyd argues that without counsel present to advise C.H., she was likely afraid to testify that the allegations in her Gingerbread House interview were false because doing so would subject her to perjury charges.
Prior to C.H.'s testimony, the state notified the trial court that C.H. had retained an attorney, and requested that C.H.'s attorney be prohibited from making any objections on her behalf. The trial court agreed, explaining that because C.H. had never given testimony under oath prior to trial she could not be charged with perjury, and, therefore, she was not entitled to have an attorney make any objections on her behalf. The trial court agreed that C.H.'s attorney could be present in the courtroom.
Subsequently, during the state's direct examination of C.H., the prosecutor asked her if she had ever recanted the allegations she made during her interview at the Gingerbread House. C.H. confirmed that she had, two days before trial, because she was under the mistaken belief that she would not be allowed to stay at her house with her mother and grandmother if the trial proceeded against the defendant. During cross-examination, defense counsel also questioned C.H. regarding her recantation, and C.H. acknowledged that she told the prosecutor that she had lied during her Gingerbread House interview.
Accordingly, the record shows that, contrary to Floyd's factual assertions, defense counsel was permitted to question C.H. about her recantation. Additionally, because C.H. was a witness, and not subject to prosecution for perjury, she was not entitled to have a lawyer present during trial to advocate on her behalf.
These two assignments are without merit.
CONCLUSION
For the reasons stated, we find no merit to the assigned errors, and accordingly, affirm the defendant's conviction.
CONVICTION AFFIRMED.

On the same date as the instant conviction, the state filed a habitual offender bill of information charging Floyd as a third-felony habitual offender; the court later adjudicated him as charged, vacated this 20-year sentence and resentenced him to life without benefit of probation, parole or suspension of sentence. That sentence has been appealed separately.

C.H. said she was around 5 years old at the time of the incident. However, if the incident occurred in March of 2008 after the defendant was released from jail, C.H. would have been 7 years old at that time.

We observe that in State v. Jackson, supra, the court held that certain evidence of prior sexual acts that did not involve the same victim was admissible because the illicit conduct or act was of a similar nature as the current offense charged. The court held that other evidence of past sexual conduct not involving the current victim was inadmissible because the conduct involved dissimilar sexual acts of a more serious nature and its admission into evidence would inflame the jury and outweigh its probative value. We do not find any requirement in La. C.E. art. 412.2 that the prior sexually assaultive conduct or acts must involve the same victim of the offense for which the defendant is being tried.