<u>**NOT DESIGNATED FOR PUBLICATION**</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 KA 1548

STATE OF LOUISIANA

VERSUS

TIMOTHY FALGOUT

**Judgment Rendered:** *JUN 0 6 2022*

* * * * * *

Appealed from the
Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket Number 581480
Honorable Steven M. Miller, Judge Presiding

* * * * * *

Kristine Russell
District Attorney
Joseph S. Soignet
Jason Chatagnier
Assistant District Attorneys
Thibodaux, Louisiana

Counsel for Appellee
State of Louisiana

Bertha M. Hillman
Covington, Louisiana

Counsel for Defendant/Appellant
Timothy Falgout

* * * * * *

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

Holdridge J. concurs w/ Reasons

**GUIDRY, J.**

The defendant, Timothy Falgout, was charged by grand jury indictment with first degree rape of a victim under the age of thirteen years, a violation of La. R.S. 14:42(A)(4). He pled not guilty. A jury found the defendant guilty as charged. The trial court denied the defendant's motion for post-verdict judgment of acquittal and motion for new trial. The defendant was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. He now appeals, assigning error to the denial of his motion for mistrial and motion for new trial, both on the grounds of the admission of other crimes evidence. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

In July of 2018, Deputy Nicole Doucet of the Lafourche Parish Sheriff's Office (LPSO) was assigned to investigate a complaint of sexual abuse. Specifically, the Louisiana Department of Children and Family Services notified the LPSO that L.R.[1] (the victim) reported she was being sexually abused by her stepfather (the defendant). Deputy Doucet contacted and interviewed the victim's mother, C.F., and scheduled interviews for the victim and her siblings at the Children's Advocacy Center (CAC).[2]

L.R. was fourteen years old at the time of the CAC interview. During the interview, she stated that her stepdad (the defendant) "sexually abuses" her. Specifically, she stated that when she was seven years old, the defendant began touching her inappropriately on her legs and "down here" (pointing to her vaginal area), which she further described as her "private parts" and the outside of her

---

[1] The victim's date of birth is April 6, 2004. The victim was fourteen years old when the LPSO investigated the complaint and seventeen years old at the time of the trial. Herein, we will use initials to identify or refer to the child victim and her immediate family members. See La. R.S. 46:1844(W).

[2] C.F. began dating the defendant when the ages of her children were seven, six (the victim), and two years old. C.F. and the defendant got married on March 23, 2013, just before the victim turned nine years old.

vagina. She confirmed that at the time of the first incident, they were living in a trailer with the defendant's father and that she, her siblings, her mother, and the defendant all slept in one room. She indicated that she and her brothers slept on the floor, and stated that the incidents would occur during the middle of the night while everyone was asleep. She stated that the defendant would remove her clothing during the incidents. She further stated that the defendant used his hands to touch her, and noted that the incidents "got worse" as she got older.

L.R. stated that by the time she was around nine years old, after they moved to a different residence, the defendant progressed to forcefully putting her hand "on his thing," and moving her hand up and down. She stated that if she tried to pull her hand away, the defendant would push it back and hold it in place. When she was about ten years old, the defendant started pushing her head down and putting "his thing" in her mouth. She stated that the defendant would keep pushing her head down if she tried to raise it and would move "it" back and forth to make "it" go in and out of her mouth. The victim further detailed incidents of oral sex being forcefully performed on her by the defendant that began when she was about eleven years old.

According to the victim, at the age of eleven, the defendant entered her bedroom and began "putting his penis inside me." In describing the first incident of intercourse, she noted that the defendant held her arms down, pulled her pants down, and progressed from rubbing her to penetrating her. She stated that as she began crying and trying to move away, the defendant threatened to hurt her and twisted her arm until it made a loud popping noise. Other similar incidents followed, and the defendant threatened he would hurt her if she ever told anyone it happened. The victim testified consistently at trial. The defendant also testified at trial and repeatedly denied committing any sexual acts against L.R. He testified

that L.R. lied about the claims of sexual abuse because she did not want to do her chores or continue living with him and her mother.

## ASSIGNMENT OF ERROR

In the sole assignment of error, the defendant notes that while the State agreed that portions of the victim's recorded CAC interview would be redacted, the State inadvertently played the unredacted version of the recorded statement, in which the victim accused the defendant of physically abusing her and his other stepchildren. The defendant claims the State's evidence in this case consisted primarily of accusations the victim made to third parties with no independent evidence to support the accusations or to establish her credibility. He further notes that the history obtained from the victim was the basis for the opinions of the expert witnesses. He argues that the unredacted statements that the victim made during the CAC interview were "highly prejudicial" because of the great danger that the jury could have drawn the "highly prejudicial inference" that he had a violent nature.

The defendant contends that without this "prejudicial" evidence, the jury may have been equally divided and may have given more weight to facts that established weaknesses in the State's case. In arguing that the jury may have found reasonable doubt if not for the admission of bad character evidence, the defendant lists the following facts presented at trial: (1) other family members had no knowledge of any abuse, even though all of the family members were all sleeping in one bedroom when the abuse allegedly began; (2) the victim had a history of psychological problems including ADHD, depression, and suicidal ideation; (3) the victim had stopped taking her medication; and (4) C.F. believed the victim had multiple personality disorder. Finally, the defendant contends the evidence at issue had no independent relevancy besides simply showing a criminal disposition.

4

In response, the State contends that the victim's recorded comments did not directly refer to other crimes or child abuse, but instead referenced punishments and other acts the defendant engaged in as a stepfather. The State concedes that the parties agreed that portions of the CAC interview would be redacted before being played for the jury, but those portions inadvertently remained in the recording. However, the State argues that the trial court properly denied the defendant's motion for mistrial and motion for a new trial, as the evidence at issue was admissible to present a picture of the victim's home life, in the victim's words, allowing the jury to place the alleged acts in context. The State notes that the rule of narrative completeness allows the prosecution to place such evidence before the jurors. Further, the State disputes the defendant's claim that the statements were prejudicial. In that regard, the State notes that the proof of the charged offense and the other acts came from the victim, such that the jury would have had to find the victim truthful in order to believe that the other acts occurred. Thus, the State concludes that the victim's discussion of the other acts could not make it either more or less probable that she was being honest about the instant offense.

Under La. C.E. art. 402, all relevant evidence is generally admissible. However, under La. C.E. art. 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Evidence is deemed relevant if such evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401.

Louisiana Code of Evidence article 404(B)(1) provides that evidence of other crimes, acts or wrongs is generally not admissible. However, such evidence may be admissible to prove motive, opportunity, intent, preparation, plan,

5

knowledge, identity, absence of mistake or accident. La. C.E. art. 404(B)(1). Further, other crimes evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La. C.E. art. 404(B)(1). This exception, formerly known as "res gestae," incorporates a rule of narrative completeness without which the State's case would lose its narrative momentum and cohesiveness. Such evidence forms part of the res gestae when it is so related and intertwined with the charged offense that the State cannot accurately present its case without reference to it. The evidence completes the story of the crime by providing context to the events. See State v. Taylor, 01-1638, p. 10 (La. 1/14/03), 838 So. 2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004); State v. Swan, 18-0320, p. 27 (La. App. 1st Cir. 12/17/18), 2018 WL 6599023, at *15, writ denied, 19-0151 (La. 5/20/19), 271 So. 3d 1270.

Under certain circumstances, the admission of inadmissible other crimes evidence can warrant the granting of a mistrial. See La. C.Cr.P. arts. 770, 771 & 775. Louisiana Code of Criminal Procedure article 771 requires the trial judge to admonish the jury to disregard a comment made within the hearing of the jury that is irrelevant, or immaterial, and of such a nature that it might create prejudice to the defendant or the State, when an admonishment is requested by the defendant or the State. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. La. C.Cr.P. art. 771.[3]

---

[3] On motion of the defendant, a mistrial is mandated by Article 770 based on specified remarks or comments made by the judge, district attorney, or court official within the hearing of the jury. Article 771 applies to remarks or comments by the judge, the district attorney, or a court official that are not within the scope of Article 770, or to remarks or comments made by any other witness or person, regardless of whether the remark or comment is within the scope of Article 770. See La. C.Cr.P. art. 771(1) & (2). As the references at issue were not made by the judge, district attorney, or a court official, a mistrial is not mandated in this case.

A mistrial under the provisions of La. C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of a witness who is not a court official make it impossible for a defendant to obtain a fair trial. State v. McIntosh, 18-0768, p. 4 (La. App. 1st Cir. 2/28/19), 275 So. 3d 1, 4-5, writ denied, 19-00734 (La. 10/21/19), 280 So. 3d 1175. Further, a mistrial is a drastic remedy that should be granted only when a defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Thus, a "mere possibility of prejudice is not sufficient." State v. Caminita, 16-0121, p. 7 (La. App. 1st Cir. 9/16/16), 203 So. 3d 1100, 1106, writ denied, 16-2045 (La. 9/6/17), 224 So. 3d 988. The trial court has sound discretion in determining whether a mistrial should be granted, and its denial of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. McIntosh, 18-0768 at p. 4, 275 So. 3d at 5. A reviewing court should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. See La. C.Cr.P. art. 921.

Herein, prior to the victim's CAC interview being played at trial, the trial court asked the defense attorney if she had any objections to the video being played. At that point, the State interjected, and averred that it had redacted two minutes of the video, as the State was aware that the defendant had concerns about the victim's reference to an accusation against the defendant made by another child, D.G.[4] The trial court asked the jury to exit the courtroom before giving the defense attorney another opportunity to note for the record any objections to the CAC interview. At that point, the defense attorney noted her objection to the portion of the video consisting of other crimes evidence regarding D.G. After

---

[4] As previously noted, we will use initials to identify or refer to child victims in this case. See La. R.S. 46:1844(W). D.G.'s date of birth is March 27, 2001. At trial, D.G. testified that when she was sixteen years old her family moved down the street from the Falgout residence, and she began staying at the Falgout residence at the victim's request. D.G. further testified that the defendant started having sex with her at that time, and she detailed specific instances. D.G.'s testimony was admitted pursuant to La. C.E. art. 412.2(A).

7

noting the State's contention that the two-minute portion of the video had been redacted, the defense attorney stated, "So if the references to [D.G.] being raped are removed, obviously, that negates my objection or makes my objection moot." The State reiterated that the hearsay statements in question had been redacted from the video and played the interview in the presence of the jury.

However, after the video concluded, the defense attorney objected, initially only on the grounds of hearsay, pertaining to the victim saying what D.G. said. The defense attorney noted that the State played the unredacted version of the interview as opposed to the agreed upon redacted version omitting the hearsay statements. The defense attorney noted the hearsay statements as being viewed between 9:46 to 9:48 of the interview. During that period of the interview, the victim stated that D.G. told her the defendant also "done it to her" when she would sleep over. When asked to elaborate, the victim said D.G. told her the defendant did "[kind of] just the same things that has happened to me.".[5]

The State ultimately agreed that the unredacted recording was inadvertently presented to the jury, and the defense attorney then moved for a mistrial. At that point, the defense attorney also objected to portions of the recording where the victim noted the defendant would hit her and her siblings and "throw us into a cabinet when we didn't do something perfect." The State argued the defendant knew about the statements at issue and contended that the references to the defendant's acts as a stepdad were "punishment" as opposed to child abuse.

In denying the motion for mistrial, the trial court noted that the statements regarding "corporal type of punishment" or "some level of discipline" were not clear as to what was happening or whether criminal or bad acts were involved and

---

[5] The exhibit in the record, S-3, consists of one electronic file containing the recorded interview immediately followed by a repeat or replay of the recorded interview. The initial recording includes the section of the interview referenced above while that portion was apparently redacted from the repeat of the interview.

did not rise to a level requiring that they be stricken. The trial court offered to give a limiting instruction in that regard, which the defense attorney declined. As to the statements the victim made about what D.G. told her, the trial court noted that the statements were cumulative, as D.G. and her mother were testifying at the trial. The defense attorney approved the trial court's suggested instruction to the jury that hearsay is inadmissible and that the jury should disregard the hearsay comments. As agreed, the trial court informed the jury that the statements made by the victim during the CAC interview in regards to what D.G. told her were inadmissible hearsay and further instructed, "[y]ou are to disregard the comments where she spoke of what [D.G.] told her. It cannot factor into your deliberations." In later denying the defendant's motion for new trial, the trial court similarly noted that the evidence was introduced unintentionally, that the acts of punishment did not necessarily constitute other crimes or bad acts, that the evidence was cumulative, and that it did not affect the verdict.

On appeal, it appears the defendant has not reasserted his challenge to the inadvertent admission of hearsay statements made by the victim during the CAC interview regarding the sexual abuse of D.G. In that regard, we reiterate that the trial court admonished the jury, as agreed to by the defendant, to disregard the victim's hearsay statements pertaining to D.G. Moreover, the statements were brief and cumulative to D.G.'s trial testimony, admissible under La. C.E. art. 412.2[6] to show the defendant's lustful disposition toward young children.

---

[6] When a defendant is charged with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of his other acts involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible if the court determines that, pursuant to La. C.E. art. 403, its probative value outweighs its prejudicial effect. La. C.E. art. 412.2(A); see State v. Wright, 11-0141, pp. 11-16 (La. 12/6/11), 79 So. 3d 309, 316-19. Article 412.2 was a legislative response to earlier decisions from the Louisiana Supreme Court refusing to recognize a "lustful disposition" exception to the prohibition of other crimes evidence under La. C.E. art. 404. Id. at 11-0141 at pp. 12-13, 79 So. 3d at 317.

Regarding the victim's statements pertaining to the defendant's disciplinary actions, we agree with the trial court's assessment that the defendant's actions were not fully described by the victim. Ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. Caminita, 16-0121 at p. 7, 203 So. 3d at 1106. To the extent that the acts described by the victim could be viewed as bad or violent acts by the defendant, we find that the described acts were related and intertwined with the details of the ongoing sexual acts to such an extent that the State could not have accurately presented its case without presenting the statements at issue. Thus, the State did not violate Article 404 in playing the recording in its entirety,[7] as the full recording presented an integral part of its case necessary to complete the narrative. Even if we were to determine that the statements constituted impermissible other crimes or bad acts that were improperly played before the jury and should have been redacted from the recorded interview, we note that the introduction of inadmissible "other crimes" evidence results in a trial error subject to a harmless error analysis. State v. Johnson, 94-1379, p. 17 (La. 11/27/95), 664 So. 2d 94, 102. The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); Johnson, 94-1379 at p. 14, 664 So. 2d at 100.

We note that the evidence in this case consisted of very detailed claims by the victim. Her trial testimony was consistent with her CAC interview regarding the ongoing sexual abuse by the defendant that began with inappropriate touching

---

[7] We note that the record does not reveal that the defense asked nor that the State agreed to redact the portions of the video at issue herein regarding the defendant's disciplinary actions. However, in its brief on appeal, the State initially seems to concede that it had agreed to redact the statements regarding the defendant's disciplinary actions. Nonetheless, the State ultimately notes that the defendant's pretrial motion in limine pertained only to his desire to exclude references to the evidence being admitted under Article 412.2 and that the defendant did not object to the references at issue regarding defendant's disciplinary actions herein before the video was played for the jury.

and progressed to intercourse. Credit should be given to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments. State v. Bridgewater, 00-1529, p. 32 (La. 1/15/02), 823 So. 2d 877, 902, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). There is no indication that the jury was unable to discern and distinguish the acts constituting the instant offense from the brief references to other acts challenged herein. We are convinced that the verdict actually rendered in this case was surely unattributable to any error in the admission of the above referenced statements. We further conclude that the drastic remedy of a mistrial was not warranted in this case and that the trial court did not err in denying the subsequent motion for new trial. Thus, we find no merit in the sole assignment of error.

**CONVICTION AND SENTENCE AFFIRMED.**

STATE OF LOUISIANA

VERSUS

TIMOTHY FALGOUT

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 1548

 **HOLDRIDGE, J., concurs.**

In this matter, the State agreed to introduce a redacted version of the victim's Child Advocacy Center interview, but instead the unredacted version was inadvertently played for the jury. The defendant urged that the unredacted version contained "other crimes" evidence that was prejudicial to him. Except in this unique situation, our system of justice would not allow the state to renege on such an agreement at trial, and the admission of evidence contrary to such an agreement would result in a mistrial. See La. C.Cr.P. art. 775.

However, in this case, the evidence contained in the unredacted video was later properly admitted through the in-court testimony of D.G. Therefore, showing the unredacted version of the video resulted in no prejudice to the defendant. Even though the trial court should grant a mistrial in situations where the state admits evidence they have agreed to redact, the trial court did not err in denying a mistrial in this case.